MID-CENTURY INSURANCE COMPANY, a Corporation, Appellant and Cross-Respondent, v. JAN ELLEN MILLER DANIEL, Respondent and Cross-Appellant.

No. 15714

August 28, 1985                                    705 P.2d 156

*Beckley, Singleton, DeLanoy & Jemison, J. Mitchell Cobeaga,* and *Frances A. Forsman,* Las Vegas, for Appellant and Cross-Respondent.

*Fitzgibbons, Cobb & Morrell* and *Paul L. Larsen,* Las Vegas, for Respondent and Cross-Appellant.

*Allan R. Earl, J. R. Crockett, Jr.,* and *Jack Lehman,* Las Vegas, and *David Gamble,* Carson City, for Nevada Trial Lawyers Association, Amicus Curiae.

## OPINION

*Per Curiam:*

We are required in this appeal to interpret the 1979 version of NRS 687B.145 which directs insurance carriers to provide uninsured and underinsured motorist protection to their policy holders. Because we conclude that the district court's interpretation is supported by the plain language of the statute, we affirm.

Respondent and cross-appellant Jan Ellen Miller Daniel (Daniel) sustained injuries when her vehicle was struck from behind by a vehicle operated by Lee Hua Mulnix (Mulnix). An arbitrator later determined Daniel's damages, which included all medical expenses, economic losses, and pain and suffering, to be $25,628.15.

Both Daniel and Mulnix were covered by the same insurance carrier, appellant and cross-respondent Mid-Century Insurance Company (Mid-Century). The limits on Daniel's and Mulnix's third party liability insurance were identical: $15,000.00 per person, $30,000.00 per occurrence. In addition to her liability coverage, Daniel's policy included no-fault and uninsured/ underinsured motorist protection. Daniel settled her claim against Mulnix for $15,000.00, the maximum amount recoverable under Mulnix's policy with Mid-Century.

After settling her claim against Mulnix's policy, Daniel brought an action against Mid-Century for declaratory relief seeking additional compensation under the terms of her own policy. The district court granted Daniel partial summary judgment, finding Mid-Century liable under Daniel's underinsured motorist protection for any damages not recoverable under Mulnix's policy. Daniel requested entry of judgment for $10,628.15. Because Daniel had received $10,000.00 in reparation benefits under her own no-fault policy, the district court denied the motion and entered judgment for $628.15. From this order both parties appeal.

The primary issue presented for our consideration is whether NRS 687B.145(2), as it read in 1979,[1] encompasses excess-type or reduction-type underinsured motorist protection. Mid-Century argues that the statute incorporates the latter; Daniel argues for the former.

The excess approach allows the insured to recover when his damages exceed the limits of the tortfeasor's insurance coverage. For example, if the tortfeasor had $15,000.00 in liability coverage but the insured suffered damages of $20,000.00, the insured could collect the excess $5,000.00 in damages on his underin-

---

[1]NRS 687B.145 was amended in 1983. The amended version is not applicable here because the accident giving rise to this litigation occurred in September, 1979. The 1979 version of NRS 687B.145(2) provided:

> Insurance companies doing business in this state must offer uninsured motorist coverage equal to the limits of bodily injury coverage sold to the individual policyholder. Uninsured motorist coverage must include a provision which enables the insured to recover any amount of damages for bodily injury from his insurer to which he is legally entitled but which exceeds the limits of the bodily injury coverage carried by the owner or operator of the other vehicle.

sured motorist policy. NRS 687B.145(2) requires carriers to offer underinsured motorist coverage up to the limits of the insured's liability coverage. Therefore Daniel, with the minimum $15,000.00 per person coverage on her liability policy, had $15,000.00 coverage on her underinsured motorist policy. Under the excess analysis, Daniel would then be able to recover any damages in excess of the $15,000.00 recoverable under Mulnix's policy from her underinsured motorist policy up to her own $15,000.00 limit.

Conversely, under the reduction approach, Daniel would not be able to recover any excess damages because her $15,000.00 in underinsured motorist coverage equalled the $15,000.00 in liability coverage of the tortfeasor. In this analysis the insured's underinsured motorist coverage is reduced by the amount recoverable under the tortfeasor's policy. Therefore Daniel's $15,000.00 coverage in underinsured motorist protection would be reduced to zero by Mulnix's $15,000.00 in liability coverage.

Mid-Century concedes that NRS 687B.145(2), as amended in 1983,[2] provides for excess-type underinsured motorist coverage. Mid-Century contends, however, that the legislature amended, not clarified, the statute in 1983. From July 1, 1979, when the underinsurance provision was first enacted, to July 1, 1983, when it was amended, Mid-Century asserts that the statute incorporated the reduction approach.

We agree with Daniel, however, that legislative intent to embrace the excess method is evident from the plain language of the original enactment. We will not, therefore, resort to extrinsic authorities in an effort to deduce legislative intent. *See* Cirac v. Lander County, 95 Nev. 723, 729, 602 P.2d 1012 (1979). The disputed language is repeated here for ease of reference:

> Uninsured motorist coverage must include a provision which enables the insured to recover *any amount of damages* for bodily injury from his insurer to which he is legally entitled but *which exceeds the* limits of the bodily injury *coverage carried by* the owner or operator of *the other vehicle.*

(Emphasis added).

We interpret this language to mean that the insured's *damages*

---

[2]NRS 687B.145(2) now reads:

> Insurance companies doing business in this state must offer uninsured motorist coverage equal to the limits of bodily injury coverage sold to the individual policy holder. Uninsured motorist coverage must include a provision which enables the insured to recover up to the limits of his own coverage any amount of damages for bodily injury from his insurer which he is legally entitled to recover from the owner or operator of the other vehicle to the extent that those damages exceed the limits of the bodily injury coverage carried by that owner or operator.

must exceed the limits of the coverage carried by the owner or operator of the other vehicle. The phrase "any amount of damages" logically modifies the clause "which exceeds the limits of the . . . coverage carried by the owner . . . of the other vehicle." Hence, underinsured motorist coverage becomes effective when the insured's damages exceed the tortfeasor's bodily injury coverage limits.

Because the language of the statute is plain, we need not consider the parties' contentions regarding the intent behind the subsequent amendment and the merits of one approach versus the other. When the plain language of an original enactment is consistent with the language of an "amendment," we need not infer amendatory intent. We therefore conclude that the 1983 alteration of the statutory language must have been a clarification of the legislature's original intent to incorporate the excess approach.

In her cross-appeal Daniel argues that NRS 687B.145(1)[3] prohibits Mid-Century from using her reparation benefits to set off her underinsured motorist benefits. Mid-Century correctly points out, however, that the district court did not allow a set-off but merely precluded Daniel from receiving a double recovery. NRS 687B.145(1) invalidates "anti-stacking" provisions in insurance policies where the insured has paid a separate premium for the coverage. Even before the passage of NRS 687B.145(1), we consistently struck down as void anti-stacking provisions where the insured had purchased multiple coverage for the same risk. *See* Travelers Insurance Co. v. Lopez, 93 Nev. 463, 567 P.2d 471 (1977); Staten v. State Farm Mut. Auto Ins., 94 Nev. 283, 579 P.2d 766 (1978). *See also* Neumann v. Standard Fire Insurance Co., 101 Nev. 206, 699 P.2d 101 (1985). We have never permitted the stacking of multiple policies, however, to allow an insured a double recovery for the same loss. Because Daniel has received

___

[3]NRS 687B.145(1) provides as follows:

687B.145 Provisions in policies of casualty insurance: Proration of recovery or benefits between policies; uninsured motorist coverage.
1. Any policy of insurance or endorsement providing coverage under the provisions of NRS 690B.020 or other policy of casualty insurance may provide that if the insured has coverage available to him under more than one policy or provision of coverage, any recovery or benefits may equal but not exceed the higher of the applicable limits of the respective coverages, and the recovery or benefits must be prorated between the applicable coverages in the proportion that their respective limits bear to the aggregate of their limits. Any provision which limits benefits pursuant to this section must be in clear language and be prominently displayed in the policy, binder or endorsement. Any limiting provision is void if the named insured has purchased separate coverage on the same risk and has paid a premium calculated for full reimbursement under that coverage.

or been awarded compensation to the full extent of her injuries,[4] we conclude that Daniel is not entitled to an additional $10,000.00 in underinsured motorist benefits. To hold otherwise would allow Daniel a double recovery for the same item of damages.

Before its repeal, NRS 690B.020(7) provided: "To the extent that a person is entitled to basic reparation benefits under chapter 698 of NRS [no-fault], he may not recover payments under uninsured motor vehicle coverage."[5] In a previous examination of NRS 690B.020(7) we concluded that the "Legislature intended NRS 690B.020(7) to preclude only a double recovery of benefits under both the no-fault and uninsured motorist provisions of a policy." Staten v. State Farm Mut. Auto Ins., 94 Nev. 283, 285, 579 P.2d 766 (1978). *See also* Bryan v. Allen, 96 Nev. 572, 573, 613 P.2d 412 (1980) (appellants' jury award properly reduced by amount of previously paid reparation benefits because "injured party . . . not entitled to multiple recovery for the same loss"). Thus NRS 690B.020(7) authorized the stacking of no-fault and uninsured motorist benefits, but only when the insured's damages exceeded the reparation coverage limits. Daniel is not entitled to underinsured motorist benefits to the extent that her damages were compensated by her reparation benefits. Accordingly, we affirm the district court's judgment that Daniel is entitled to recover $628.15, not $10,628.15, from her underinsured motorist policy.[6]

---

[4]The arbitrator determined Daniel's damages to be $25,628.15. Daniel has received or been awarded compensation as follows: $15,000.00 from Mulnix's policy; $10,000.00 in reparation benefits from her own no-fault policy; $628.15 from her underinsured motorist policy as awarded by the district court.

[5]NRS 690B.020(7) was repealed along with chapter 698 when the Legislature phased out no-fault insurance. This statute governs this case, however, because the accident occurred on September 19, 1979 when the no-fault provisions were still in effect. *See* Laughlin v. Hydro Search, Inc., 96 Nev. 872, 620 P.2d 373 (1980) (courts must still decide cases according to no-fault statutes which arose during the period 1973-1980).

NRS 690B.020(7) is applicable to underinsured motorist coverage as well as uninsured motorist coverage. Underinsured motorist coverage is not designated as such in NRS 687B.145(2) but merely included as a component under the uninsured motorist rubric. Logically, then, all references to uninsured coverage must also reference underinsured coverage.

[6]Daniel also contends that Mid-Century waived its right to set off the $10,000.00 no-fault payment against her underinsured motorist policy. Daniel argues that Mid-Century should have notified Daniel it would be claiming a set-off when it concluded the $15,000.00 settlement on Mulnix's policy. This contention is without merit. Daniel's claim under Mulnix's policy was distinct from her claim under her own underinsured motorist policy; Mid-Century was under no obligation to notify Daniel of an intention to "set-off" when the alleged set-off had nothing to do with the current settlement.