ROGER MAXWELL AND FARMERS INSURANCE EXCHANGE, APPELLANTS, *v.* ALLSTATE INSURANCE COMPANIES, RESPONDENT.

No. 16765

December 4, 1986                                728 P.2d 812

*J. Bruce Alverson* and *Eric Taylor,* Las Vegas, for Appellants.

*Rawlings, Olson & Cannon* and *Patrick J. Murphy,* Las Vegas, for Respondent.

*J. R. Crockett,* Las Vegas, for Amicus Curiae.

# OPINION

*Per Curiam:*

The sole issue on appeal is whether an insurer's subrogration clause for medical payments paid under an insured's automobile insurance policy is void as violative of public policy. We hold that a subrogation clause under which the insurer obtains subrogation rights from its insured for medical payments violates public policy. Accordingly, we reverse.

## THE FACTS

Jimmie Brown and appellant Roger L. Maxwell were in an automobile accident. Brown was injured. Maxwell was liable for Brown's injuries. Respondent Allstate Insurance Companies was Brown's insurer. Appellant Farmers Insurance Exchange was Maxwell's insurer.

Brown's automobile insurance policy included coverage for Brown's medical expenses for injuries sustained in an automobile accident. Allstate paid Brown's medical claims. Brown's policy included a medical payments subrogation clause which provided that upon Allstate's payment under the policy Allstate shall be subrogated to the extent of such payment to all of the insured's rights of recovery.

Allstate notified Farmers of its subrogation interest on Brown's medical payments. Subsequent to this notification, Farmers entered into a settlement with Brown and obtained a release stating that it was released of any and all claims resulting from property damage and personal injury to Brown. Allstate was not paid any monies under its alleged subrogation right. Allstate brought the instant action asserting that it was entitled to subrogation to the extent of the medical payments it had made under Brown's policy provision. Both parties filed motions for summary judgments. The district court granted Allstate's cross-motion for summary judgment.

## THE LAW

On appeal, Farmers contends that the medical payments subrogation clause in automobile insurance policies contravenes public policy and is therefore void. We have previously considered this type of subrogation clause in Davenport v. State Farm Mutual Automobile Company, 81 Nev. 361, 404 P.2d 10 (1965). Our decision in that case rested upon the statutory interpretation of

NRS 41.100 which was subsequently amended. We did not reach the issue of whether such a clause violated public policy. Therefore, *Davenport* is not controlling.

In 1967 in response to this court's decision in *Davenport* the legislature amended NRS 41.100 to prohibit the subrogation of medical payments by insurance companies.[1] In 1969 the legislature further amended NRS 41.100 to preclude an insurance company from requiring the insured to execute a trust or loan receipt in favor of the insurer prior to receiving medical payments under his insurance policy.[2]

In 1979 the legislature consolidated and amended the statutory provisions relating to civil actions for wrongful death. These statutory amendments included the amendment of NRS 41.100.

---

[1] In 1965 when the court rendered the *Davenport* decision NRS 41.100 provided:

> 1. Causes of action, whether suit has been brought upon the same or not, in favor of the injured party for personal injuries other than those resulting in death, whether such injuries be to the health or to the reputation or to the person of the injured party, shall not abate by reason of his death nor by reason of the death of the person against whom such cause of action shall have accrued; but in the case of the death of either or both, such cause of action shall survive to and in favor of the heirs and legal representatives of such injured party and against the person, receiver or corporation liable for such injuries; and his or its legal representatives; and so surviving such cause of action may be hereafter prosecuted in like manner and with like legal effect as would a cause of action for injuries to or destruction of personal property.
> 2. The court or jury in every such action may give such damages, pecuniary and exemplary, as it shall deem fair and just. Every person entitled to maintain such action, and every person for whose benefit such action is brought, may prove his respective damages, and the court or jury may award such person that amount of damages to which it considers such person entitled, including damages for losses of probable future companionship, society and comfort.

In 1967 the legislature amended NRS 41.100 to add NRS 41.100(3) which provided:

> 3. Nothing in this section shall be construed to make such causes of action assignable.

[2] In 1969 the legislature amended NRS 41.100(3) and added NRS 41.100(4) which provided:

> (3) Nothing in this section shall be construed to make such causes of action assignable, nor may an insurer obtain a trust or loan receipt from an insured prior to making medical payments to the insured under an insurance policy.
> (4) The provisions of this section shall not prevent subrogation suits under the terms and conditions of an uninsured motorists' provision of an insurance policy.

Specifically, the legislature deleted former NRS 41.100(3).[3] The legislative history pertaining to this particular amendment is silent as to any legislative policy concerns which may or may not have served as the basis for the amendment. Assuming, without deciding, that a medical payments subrogation clause would now be statutorily permissible, we consider whether the subrogation clause violates public policy.

When insurance companies began to incorporate a medical payments subrogation clause in automobile insurance policies, opposition to the inclusion was primarily based upon the contention that the subrogation clause was an attempt to assign a personal injury claim which the common law prohibited. *See* Higgins v. Allied American Mutual Fire Ins. Co., 237 A.2d 471 (D.C.App. 1968). Courts' reasoning and response to this argument are varied and diverse. *Id.; see also* Allstate Insurance Company v. Reitler, 628 P.2d 667 (Mont. 1981); Rinehart v. Farm Bureau Mut. Ins. Co. of Idaho, Inc., 524 P.2d 1343 (Idaho 1974). We need not consider the characterization of this type of an assignment. Whether the subrogation clause is viewed as an assignment of a cause of action or as an equitable lien on the proceeds of any settlement, the effect is to assign a part of the insured's right to recover against a third-party tortfeasor. *Reitler,* 628 P.2d at 670. We hold such an assignment is invalid. We are cognizant that in so doing we join a minority of jurisdictions so holding. *See Reitler,* 628 P.2d at 668-670.

---

[3]NRS 41.100 now provides:

1. Except as provided in this section, no cause of action is lost by reason of the death of any person, but may be maintained by or against his executor or administrator.

2. In an action against an executor or administrator, any damages may be awarded which would have been recovered against the decedent if he had lived, except damages awardable under NRS 42.010 or other damages imposed primarily for the sake of example or to punish the defendant.

3. Except as provided in this subsection, when a person who has a cause of action dies before judgment, the damages recoverable by his executor or administrator include all losses or damages which the decedent incurred or sustained before his death, including any penalties or punitive and exemplary damages which the decedent would have recovered if he had lived, and damages for pain, suffering or disfigurement and loss of probable support, companionship, society, comfort and consortium. This subsection does not apply to the cause of action of a decedent brought by his personal representatives for his wrongful death.

4. This section does not prevent subrogation suits under the terms and conditions of an uninsured motorists' provision of an insurance policy.

In the context of automobile insurance, we have consistently upheld the fundamental principle that an insured is entitled to receive the insurance benefits for which he has paid a premium. *See* Mid-Century Ins. Co. v. Daniel, 101 Nev. 433, 705 P.2d 156 (1985); Neumann v. Standard Fire Ins., 101 Nev. 206, 699 P.2d 101 (1985). Sullivan v. Dairyland Insurance Co., 98 Nev. 364, 649 P.2d 1357 (1982); Allstate Insurance Co. v. Maglish, 94 Nev. 699, 586 P.2d 313 (1978).[4] Therefore, we conclude that it violates public policy to allow an insurer to collect a premium for certain coverage and then allow the insurer to subrogate its interest and deny the insured his benefits. Precluding the subrogation of the insurer does not result in a double recovery for the insured because the insured is merely receiving the benefits for which he has already paid. *Reitler,* 628 P.2d at 670. Allowing subrogation deprives the insured of the coverage for which he had paid and results in a windfall recovery for the insurer. As the court in Allstate Ins. Co. v. Druke, 576 P.2d 489, 492 (Ariz. 1978) stated, the only justification for allowing subrogation for medical payments would be the lowering of premium rates as a result of such recoupment which is generally not the case:

> "Subrogation is a windfall to the insurer. It plays no part in the rate schedules (or only a minor one), and no reduction is made in insuring interests . . . where the subrogation right will obviously be worth something." Patterson, Essentials of Insurance Law 151-152 (2d ed. 1957). See also 2 Richards, Law of Insurance, § 183 (5th Ed. 1952) and DeCespedes v. Prudence Mut. Cas. Co. of Chicago, Ill., 193 So.2d 224, 227-28 (3d D.C.A.Fla. 1966), aff'd 202 So.2d 561 (Fla. 1967).

Other public policy rationales preclude an insurer's subrogation of medical payments. The injured person must bear the total costs of the suit including attorney fees. Yet under a subrogation clause the insurer collects 100 percent of the payments made with no corresponding obligation for expenses. *Reitler,* 628 P.2d at 670.

Further, the injured person may be unable to fully recover his actual damages. The injured person often must compromise his claim, either because of liability problems or because of limited coverage carried by the tortfeasor. *Reitler,* 628 P.2d at 670. The injured person's medical expense insurance coverage may not provide full indemnity. *Druke,* 576 P.2d at 491. The injured person suffers "out-of-pocket" losses, such as loss of income or

---

[4]We note that *Maglish, supra,* has been superseded by statute as stated in *Neumann, supra.* Nonetheless, the fundamental policy principle expressed in that opinion remains valid.

earning power and the costs of asserting the claim and non-economic losses such as physical pain and mental anguish which are often not monetarily indemnifiable. *Id.* Yet under a subrogation clause the plaintiff's insurer is assured full reimbursement for its medical expense payments regardless of whether the injured person's tort recovery fully covers his actual damages. *Id.; Reitler,* 628 P.2d at 670. Thus, if an insurer were permitted to assert a subrogation right the injured person may recover neither his actual damages nor the benefit of the premiums he has paid.

Finally, the tortfeasor's carrier may consider that as the injured person has already been paid medical expenses his offer can be reduced proportionate to the payment that has already been made. *Reitler,* 628 P.2d at 670. If subrogation were permitted, the injured person may recover nothing for medical expenses. *Id.*

Accordingly, we hold that an insurer's medical payments subrogation clause in an automobile insurance policy contravenes public policy and is void. We therefore reverse the decision of the district court and direct that summary judgment be entered in favor of appellants.