ROYAL PHELPS, Appellant, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.

No. 26854

May 30, 1996                                    917 P.2d 944

*Robison, Belaustegui, Robb* and *Sharp,* Reno, for Appellant.

*Georgeson, McQuaid, Thompson & Angaran,* Reno, for Respondent.

676

## OPINION

*Per Curiam:*

Appellant Royal Phelps was injured while driving his employer's vehicle. Phelps made claims against his employer's underinsured/uninsured motorist (UM) and workmen's compensation coverage and, additionally, against his own private disability coverage. However, the amount recovered from these sources was insufficient to cover his total damages, and Phelps therefore made a claim against his own UM coverage held by respondent State Farm Mutual Automobile Insurance Company (State Farm). State Farm only paid Phelps the difference between his total damages and what he had received from other sources, and Phelps argued that State Farm was required to pay him for his total damages and was not permitted to offset what he had received from other sources against his UM benefits. Both parties filed motions for summary judgment, and the district court, concluding that the offsets were permissible, granted State Farm's motion.

We conclude that the district court's grant of summary judgment was improper with regard to money Phelps received from his privately purchased disability insurance, but was proper as to all other funds Phelps received.

### FACTS

The underlying facts in this case are undisputed. On November 8, 1991, Phelps was in Florida driving a van rented by his employer, Siemens/Stromberg Corporation, for the purpose of transporting equipment. While stopped at a red light, Phelps was rear-ended by a car going approximately fifty-five miles per hour

and suffered extensive injuries. The car that collided with Phelps was uninsured.

Siemens carried UM coverage on its employees while they were using rented vehicles in the course and scope of their employment. Phelps made a claim against that coverage and received the policy limit of $100,000.00. Phelps also made a claim against his employer's workmen's compensation coverage and received a total of $98,022.40 on the following basis: $16,542.40 for medical bills, $36,480.00 for past disability benefits, and $45,000.00 for future disability benefits. Furthermore, Phelps made a claim against his privately purchased disability insurance and received $13,770.00 from that policy. The total amount paid to Phelps from these sources for his accident-related injuries and expenses was $211,792.40.

At the time of the accident, Phelps also carried his own UM coverage through State Farm. Additionally, because he lived with his parents, he was considered a "member of the household" and was also covered by his parents' UM coverage with State Farm. State Farm permitted Phelps to stack all of this UM coverage, making $500,000.00 UM coverage available to Phelps. All of the State Farm UM policies contained language stating:

> 6851RR.1 AMENDMENT OF UNINSURED MOTOR VEHICLE
> COVERAGE U
>
> . . . .
> **If There Is Other Coverage**
>
> . . . .
> 2.  If the insured sustains bodily injury while occupying a vehicle which is not your car or a newly acquired car, this coverage applies as excess to any other uninsured motor vehicle coverage which applies to the vehicle as primary coverage.

(Original emphasis omitted.) Furthermore, the policies stated:

> **Limits of Liability**
>
> . . . .
> 2.  Any amount payable under this [uninsured motorist] coverage shall be reduced by any amount paid or payable to the *insured* under any worker's compensation, disability benefits, or similar law.

Phelps sought recovery against State Farm for the full amount of his damages, which totaled $267,583.40, claiming that State Farm was not permitted to offset the amount that he received from the other sources against the amount which it owed under the UM policy. State Farm argued that pursuant to the UM policy, it was

allowed to offset the full $211,792.40 that Phelps had received from other sources and therefore it was responsible only for the difference between Phelps' total damages and the amount Phelps received from other sources, which equaled $55,791.00.

The parties entered into a settlement agreement on September 16, 1994, stipulating to the amount of Phelps' total damages and to the amount that Phelps received from other sources. Both parties agreed that State Farm owed Phelps $55,791.00 pursuant to Phelps' UM coverage with State Farm, and State Farm paid that amount to Phelps. However, the parties could not agree whether State Farm was permitted to offset the $211,792.40 or if State Farm was also required to pay that amount to Phelps, and they agreed to let a district judge make that determination. Both parties filed motions for summary judgment, and on January 23, 1995, the district court granted State Farm's motion and denied Phelps' motion, concluding that the offsets were proper and that State Farm was liable to Phelps only for the $55,791.00 which it had already paid.

Phelps now appeals the district court's order granting State Farm's motion for summary judgment and denying his motion for summary judgment.

## DISCUSSION

We conclude that the district court's grant of summary judgment was proper with regard to the $198,022.40 Phelps received from his employer's UM and workmen's compensation coverage, but was improper with regard to the $13,770.00 Phelps received from his own privately purchased disability insurance coverage.

I. *The offset provisions in the UM policy are not contrary to public policy and are enforceable as to the $198,022.40 Phelps received from his employer's UM and workmen's compensation coverage*

Phelps argues that while this court has determined that offset provisions in UM insurance policies may reduce the amount of insurance benefits owed under the UM policy by the amounts received by the insured from other sources (such as an employer's UM and workmen's compensation coverage), this is not a situation where such offsets are permissible. State Farm argues that Nevada has long recognized that the purposes of UM coverage are to make the claimant whole and to avoid double recovery and that these offsets are in accord with those purposes.

Phelps' first argument is that the provisions in his UM policy which permit the offsets are contrary to public policy. We dis-

agree. In Continental Casualty v. Riveras, 107 Nev. 530, 814 P.2d 1015 (1991), Riveras, the injured party, was injured while driving an Elko County school bus when an oncoming car forced him off the road. The other driver's insurance was insufficient to cover Riveras' damages, and because Riveras was insured under the automobile liability policy issued by Continental to the Elko County School District, he made a claim against the UM coverage which Elko County had on the bus. The policy contained an offset provision identical to the one in the instant case which stated that "any amount payable under this coverage shall be reduced by . . . all sums paid or payable under any worker's compensation, disability benefits or similar law." *Id*. at 532, 814 P.2d at 1017. Continental used this provision to reduce the amount it owed Riveras by the amount of SIIS benefits that Riveras received. Riveras claimed that the offset provision was against public policy because it prevented him from obtaining insurance benefits for which insurance premiums were paid.

This court stated that the offset provision was not against public policy because (1) the school district was not required by law to purchase the UM coverage for its employees; and (2) the UM benefits received by Riveras were commensurate with the type of coverage upon which the premiums were calculated and paid. *Id*. at 533, 814 P.2d at 1017.

Based on the language from *Riveras,* we conclude that the offset provisions in the State Farm UM policy are not against public policy. While Phelps states that he was required by law to purchase UM coverage, such is not the case. NRS 687B.145(2) states only that:

> Insurance companies transacting motor vehicle insurance in this state must offer, on a form approved by the commissioner, uninsured and under insured vehicle coverage in an amount equal to the limits of coverage for bodily injury sold to an insured under a policy of insurance covering the use of a passenger car. . . .

NRS 690B.020(1) states that uninsured motorist coverage is not required when it is "rejected in writing, on a form furnished by the insurer describing the coverage being rejected, by an insured named therein . . . ." This language clearly demonstrates that while UM coverage must be offered to the insured, the insured may decline this coverage. Therefore, an insured is not required by law to purchase UM coverage.

Phelps's second argument is that he is entitled to the proceeds

of his UM policy because he paid the premiums himself. Again, we disagree. In Maxwell v. Allstate Ins. Co., 102 Nev. 502, 728 P.2d 812 (1986), the automobile insurance policy at issue was purchased by an individual and contained a medical payments subrogation clause which this court declared void as against public policy. In so holding, this court stated:

> In the context of automobile insurance, we have consistently upheld the fundamental principle that an insured is entitled to receive the insurance benefits for which he has paid a premium.

*Id.* at 506, 728 P.2d at 815 (citations omitted).

Phelps argues that he paid the UM premiums himself and is therefore entitled to receive the benefits from that policy. This argument, however, is not applicable in this situation because this court has stated that in *Maxwell* it was "concerned about the injured party receiving something less than a full recovery. Inasmuch as [the injured party] received a full and total recovery, *Maxwell* and its public policy concerns are inapplicable." Ellison v. C.S.A.A., 106 Nev. 601, 605, 797 P.2d 975, 978 (1990); *see also* Mid-Century Ins. Co. v. Daniel, 101 Nev. 433, 705 P.2d 156 (1985) (allowing the insurance company to set off the injured party's liability benefits against her UM benefits because separate coverage had been purchased for the same risk and the court wished to preclude double recovery in such circumstances).

We conclude that in the instant case there is no possibility that enforcement of the offset provisions will deny Phelps a full recovery for his injuries because Phelps has already been made whole through a combination of payments. Phelps purchased separate coverage for the same risk, and requiring State Farm to pay Phelps for injuries which he has already been compensated for from other insurance sources would sanction a double recovery in contravention of established Nevada public policy. *See* Truck Ins. Exchange v. SIIS, 107 Nev. 995, 997, 823 P.2d 279, 281 (1991).

It is well settled in this state that offset provisions in a policy which reduce the insurance benefits by the amount the insured receives from other sources are valid. *Id.* (citing Continental Casualty v. Riveras, 107 Nev. 530, 534, 814 P.2d 1015, 1018 (1991)). Additionally, "[t]he goal of UM coverage is to make the claimant whole. The offset clause prevents a double recovery by the claimant." *Id.* at 997, 823 P.2d at 281. We conclude that *Truck Ins. Exchange* is directly on point and permits State Farm

to reduce the amount it owes Phelps by the amount that Phelps collected from other sources, if other conditions are satisfied.

Finally, we conclude that the UM policy at issue expressly authorizes State Farm to offset funds that Phelps received from his employer's UM and workmen's compensation coverage. The UM policy states that it applies as excess to any other UM coverage which applies to the vehicle as primary coverage, as was the situation in this case.[1] Furthermore, the policy expressly states that payments under the policy shall be reduced by amounts paid to the insured under any workmen's compensation law. Therefore, State Farm had authority to take these offsets, and as a result Phelps was denied a double recovery for his injuries while still being made whole.

Because we have concluded that the offsets in this case prevent Phelps from obtaining a double recovery for his injuries, and are expressly permitted by the provisions in the policy, and do not violate public policy, State Farm's offset of money Phelps received from his employer's UM and workmen's compensation coverage totalling $198,022.40 was valid, and the district court's grant of summary judgment on these offsets was proper.

II. *The offset provision in the insurance policy is not enforceable as to benefits Phelps received through his private disability insurance*

The basic analysis from issue I applies here, and we conclude that the offset provisions in the policy at issue do not expressly permit State Farm to offset funds Phelps received pursuant to his privately purchased disability insurance.

Phelps' UM policy states in pertinent part that:

**Limits of Liability**

. . . .

2.  Any amount payable under this [uninsured motorist] coverage shall be reduced by any amount paid or payable to the *insured* under any worker's compensation, disability benefits, or similar law.

Phelps argues that his private disability insurance is not a "similar law" as contemplated by the policy and that State Farm should not be permitted to offset his private disability payments against his UM benefits.

---

[1] Phelps argues that the provisions in the policy regarding this issue were vague and could have been construed to preclude application of the UM coverage as excess. We conclude that Phelps' argument has no merit.

This court has previously applied the rule of *ejusdem generis,* which translated means "'of the same kind, class or nature.'" Zgombic v. State, 106 Nev. 571, 574, 798 P.2d 548, 550 (1990) (quoting State v. Church, 504 P.2d 940, 943-44 (Ariz. 1973)). By applying the rule of *ejusdem generis* to this case, the issue becomes whether private disability insurance is of the same kind, class or nature as worker's compensation or disability benefits such that the terms can be grouped and considered together.

We conclude that private disability insurance is not a "law" in the same way that worker's compensation and other statutorily created disability benefits are. Because private disability insurance is not in the same class or nature as these other benefits, they cannot, pursuant to the rule of *ejusdem generis,* be grouped together. Therefore, we conclude that State Farm was not expressly authorized or permitted to offset the funds Phelps received from his private disability insurance.

We realize that by not permitting State Farm to offset Phelps' private disability funds, Phelps will be receiving a double recovery of $13,770.00. However, we note that just because a UM policy exists does not mean that the policy issuer automatically has the authority to offset any and all funds received by the insured in order to preclude a double recovery. It is incumbent upon the policy issuer to specifically delineate in the policy which funds it can offset, and in this case, State Farm could have expressly stated in its UM policy that payments made to the insured pursuant to the UM policy would be offset by funds received by the insured from the insured's own private disability insurance. State Farm, however, neglected to include such language.

Because the UM policy did not expressly authorize State Farm to offset Phelps' private disability funds, such an offset was improper. The district court's grant of summary judgment on this issue must therefore be reversed and remanded, with directions to the district court to have State Farm pay Phelps an additional $13,770.00.

## CONCLUSION

We conclude that the district court correctly granted State Farm's motion for summary judgment with regard to the $198,022.40 that Phelps received from his employer's UM and workmen's compensation coverage because such offsets prevented Phelps from obtaining a double recovery, were expressly permitted by the UM policy, and did not contravene public policy. However, we conclude that the district court's grant of summary judgment with regard to the $13,770.00 Phelps received from his own private disability insurance was improper

because such an offset was not expressly permitted by Phelps' UM policy. Thus, the district court's grant of summary judgment as to the private disability funds must be reversed with orders to the district court to have State Farm pay Phelps an additional $13,770.00.