GREEN, J.
On this appeal, we are asked to determine whether health insurance benefits received by an insured as payments for past medical expenses are subject to set-off from the insured’s recovery of underin-sured/uninsured (“UIM/UM”) benefits pursuant to section 627.727(1), Florida Statutes (1995). We conclude that they are not. Accordingly, for the reasons which follow, we affirm the final judgment entered below.
Appellee Andres Vega sustained personal injuries as a result of his involvement in an automobile accident with another vehicle. At the time, Vega and his wife, Damarys, were insured for UIM/UM benefits by the appellant, State Farm Mutual Automobile Insurance Company (“State Farm”). Vega was also insured for health care benefits, through his employer, by Guardian Life Insurance Company of America (“Guardian”) which provided him with health care benefits for his injuries. According to the terms of Guardian’s policy, Vega was required to repay Guardian from any payment received by Vega for the negligence, intentional act, or no-fault tort liability of a third party.[1]
*740 Vega and his wife filed suit against the tortfeasors responsible for the accident, as well as against State Farm for UIM/UM benefits. Prior to trial, the Vegas settled their claim with the tortfeasors’ liability carrier for $25,000. The Vegas then moved for summary judgment on the issue of liability against State Farm. The motion was granted and the case proceeded to a jury trial solely on the question of damages. During the trial, counsel agreed to resolve all set-off issues post-trial with the court.[2]
The jury returned its verdict finding that Vega had sustained damages totaling $119,412 as follows: $19,412 in past medical expenses; $35,000 in future medical expenses; $10,000 for past pain and suffering and $55,000 for future pain and suffering. During a post-trial hearing on State Farm’s motion for set-off and the Vegas’ motion for entry of final judgment, the parties both agreed that the $25,000 received by Vega from the tortfeasors’ liability carrier was subject to set-off from the jury’s verdict. State Farm, however, further argued that the amounts paid by Guardian were also subject to set-off from the verdict pursuant to Florida’s UM statute, section 627.727(1) which provides in relevant part that:
The coverage described under this section shall be over and above, but shall not duplicate, the benefits available to an insured under any workers’ compensation law, personal injury protection benefits, disability benefits law, or similar law; under any automobile medical expense coverage; under any motor vehicle liability insurance coverage; or from the owner or operator of the uninsured motor vehicle or any other person or organization jointly or severally liable together with such owner or operator for the accident; and such coverage shall cover the difference, if any, between the sum of such benefits and the damages sustained, up to the maximum amount of such coverage provided under this section. The amount of coverage available under this section shall not be reduced by a set-off against any coverage, including liability insurance.
The trial court declined to further set-off any medical bills paid by Guardian and accordingly entered final judgment in the Vegas’ favor for the sum of $94,414 which represented the jury’s verdict minus the $25,000 received from the tortfeasors’ carrier. This appeal followed.
State Farm maintains that the trial court erred in failing to further set-off the health benefits received by Vega from Guardian. Essentially, State Farm takes the position that the Guardian health insurance, provided to Vega through his employer, qualifies as benefits which are “available to an insured under any workers’ compensation law, personal injury protection benefits, disability benefits law, or similar law” as prescribed by section 627.727(1). Thus, according to State Farm, the amounts paid by Guardian must be set-off from the jury’s verdict. We disagree as we conclude that Guardian’s group health insurance benefits were payable pursuant to its private contract with its insured (Vega) and not payable pursuant to any legislatively enacted “similar law” as contemplated by section 627.727(1) of the uninsured motorist statute.
We note that to date, the only Florida decision to address this issue is Travelers v. Boyles, 679 So.2d 1188 (Fla. 4th DCA 1996). In Travelers, the insured (Boyles), unlike the insured in this case, took the position that his health insurance provider (Travelers) was not entitled to any reimbursement from his UM recovery pursuant to section 627.727(1), notwithstanding the reimbursement provision contained in *741 Travelers’ policy.[3] The fourth district nevertheless found the reimbursement provision contained in Traveler’s policy to be activated by the insured’s recovery from his uninsured motorist carrier. In so doing, the court pointed out that a health insurer’s right to provide that it will be reimbursed for payment it has made for medical expenses, where an insured recovers those losses from another source, is well established. Travelers, 679 So.2d at 1190 (citing Blue Cross & Blue Shield of Florida, Inc. v. Ryder Truck Rental, Inc., 498 So.2d 423 (Fla.1986)). We concur with this analysis and likewise conclude that the reimbursement provision contained in Guardian’s policy was similarly activated by the Vegas’ recovery from State Farm in this case.
In so holding, we specifically, reject State Farm’s argument that because Guardian’s health insurance payments were provided to Vega through his employer (and thus subject to the Employee Retirement Income Security Act, 29 U.S.C. 1001 et seq. and/or section 627.601, Florida Statutes (1995) et seq.), that they were made under a “similar law” to the statutes governing worker’s compensation, PIP or disability benefit schemes as prescribed by section 627.727(1). We agree with the Vegas that the mere fact that a private insurance contract may in some way be impacted or governed by federal or state legislation does not make the contract statutorily created or mandated. Indeed, we note that courts in other jurisdictions have likewise rejected the argument being advanced by State Farm on this appeal. See, e.g., Lomax v. Nationwide Mut. Ins. Co., 776 F.Supp. 870, 877 (D.Del.1991), rev. on other grounds, 964 F.2d 1343 (3d Cir.1992) (holding that “[i]t is clear that the language ‘workmen’s eompensation, disability benefits, or similar laws’ unambiguously refers to payments received or receivable under some sort of statutory mandate and not an employer’s voluntary group health plan.”); Hartford Accident and Indem. Co. v. Sena, 42 Conn. Supp. 336, 619 A.2d 489, 495-96 (1992) (benefits received by insured from a union trust fund were not “ ‘sums paid or payable under any workers’ compensation, disability benefits or similar law’ ”); Sisco v. American Family Mut. Ins. Co., 806 S.W.2d 409 (Mo.1991) (insurer could not reduce its liability under an underinsured motorist policy by virtue of service connected accidental, disability retirement benefits p'aid to insured by his employer since those benefits were retirement benefits and not disability compensation); Phelps v. State Farm Mut. Auto. Ins. Co., 112 Nev. 675, 917 P.2d 944, 949 (1996) (concluding that “[w]e conclude that private disability insurance is not a ‘lavd in the same way that worker’s compensation and other statutorily created disability benefits are. Because private disability insurance is not in the same class or nature as these other benefits, they cannot, pursuant to the rule of ejusdem generis, be grouped together. Therefore, we conclude that State Farm was not expressly authorized or permitted to offset the funds Phelps received from his disability insurance.”).
Accordingly, for the foregoing reasons, we affirm the final judgment under review.
Affirmed.

. Specifically, Guardian’s policy read in pertinent part as follows:
"Third Party” means anyone other than The Guardian, the employer or the covered person.
We will not pay any benefits under this plan, to or on behalf of a covered person, who has received payment in whole or in part from a third party or its insurer for past or future medical or dental charges or loss of earnings, resulting from the negligence, intentional act, or no-fault tort liability of a third party.
If a covered person makes a claim to us for medical, dental, or loss of earnings benefits under this plan prior to receiving payment from a third party or its insurer, the covered person must agree, in writing, to repay us from any amount of money they receive from the third party, or its insurer.
The repayment will be equal to the amount of benefits paid by us. However, the covered person may deduct the reasonable pro-rata expenses, incurred in effecting the *740 third party payment, from the repayment to us.

. Consequently, we disagree with the Vegas’ argument that State Farm waived the issue on appeal where it failed to otherwise interpose an objection during the trial.

. The court noted that Travelers’ policy provided in part that:
If The Travelers pays health benefits for expenses incurred on account of you or your Dependent, you or any other person or organization that was paid must make a refund to the Travelers if:
all or some of the expenses were recovered from or paid by a source others than this plan. This may include payments made as a result of claims against a third party of negligence, wrongful acts or omissions.
679 So.2d at 1189.