**Anna RUBIN, Plaintiff–Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellee.**

**No. 98–16961.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 9, 2000.

Filed Aug. 21, 2000.

Before: HUG, Chief Judge, D.W. NELSON and McKEOWN, Circuit Judges.

**ORDER**

Pursuant to Rule 5 of the Nevada Rules of Appellate Procedure, we certify to the Nevada Supreme Court two questions of law that may be determinative of the matter pending before this court and as to which there is no clearly controlling precedent in the decisions of the Nevada Supreme Court.

**BACKGROUND**

On February 15, 1994, appellant Anna Marie Rubin was injured in an automobile accident while picking up supplies for her business. Because the accident occurred in the course of Rubin's employment, Rubin submitted her medical bills to Nevada's State Industrial Insurance System ("SIIS"). SIIS paid her medical expenses and some lost wages and other costs, but informed Rubin that she was required to reimburse SIIS if she recovered any damages from the other parties involved in the accident. Rubin sued the other parties involved in her accident and eventually reached a compromise settlement with both defendants. Rubin states that she subsequently reimbursed SIIS for 80% of the medical expenses it paid and that she is in negotiation with SIIS regarding the other 20% (presumably for litigation expenses).

When Rubin learned that SIIS expected to be reimbursed, she submitted a claim for her medical expenses, totaling $11,759.07, to State Farm for payment under

the medical payments provision of her automobile insurance policy. This provision entitles Rubin to payments of medical expenses irrespective of her fault or the fault of anyone involved in the accident with her. However, the provision specifies that "[t]here is no coverage ... for medical expenses for bodily injury ... to the extent that worker's compensation benefits are required to be payable." State Farm refused to cover Rubin's medical expenses on the basis of this exclusion.

Rubin filed suit against State Farm in Nevada state court for breach of insurance contract, bad faith denial of coverage, and for punitive damages. State Farm removed the action to federal court. On August 3, 1998, the district court granted summary judgment in favor of State Farm. The district court found that State Farm was not required under the terms of its policy with Rubin to cover medical bills paid for by SIIS and that Rubin had not provided any evidence that she had incurred medical expenses that were not covered by SIIS. Rubin timely appealed. Before our court, Rubin contends that the district court erred in concluding that the medical payments were excluded under the terms of her State Farm insurance policy. Rubin further contends that even if the policy intended to exclude coverage under the circumstances of her case, such an exclusion violates Nevada law.

## DISCUSSION

Rubin and State Farm agree that Nevada law permits an automobile insurer to exclude coverage for medical expenses to the extent the expenses are paid by worker's compensation insurance in order to prevent a double recovery by the insured. This is the holding in *Phelps v. State Farm Mutual Automobile Insurance Company*, 112 Nev. 675, 917 P.2d 944 (1996). Phelps was injured in an automobile accident while on the job. His employer's uninsured motorist and worker's compensation insurance fully covered his damages. Phelps, however, sought recovery against State Farm under his own uninsured motorist insurance for the full amount of his damages. State Farm denied the claim under a provision in Phelps' policy stating that his uninsured motorist coverage shall be "reduced by any amount payable to the insured under any worker's compensation, disability benefits, or similar law." *Id.* at 946. The Nevada Supreme Court upheld the exclusion. The court explained that the exclusion was consistent with Nevada public policy because "Phelps ha[d] already been made whole through a combination of payments" and the exclusion prevented Phelps from receiving a double recovery for the same injuries. *Id.* at 948.

The issue that divides Rubin and State Farm and prompts us to seek guidance from the Nevada Supreme Court is whether the holding in *Phelps* applies in cases which involve a third-party tortfeasor from whom the injured party recovers some portion of her damages. In that situation, the Nevada statutes provide that a worker's compensation insurer is entitled to a lien upon the total proceeds of any recovery, whether the recovery is by way of judgment, settlement or otherwise. *See* Nev.Rev.Stat. § 616C.215;[1] *Breen v. Cae-*

---

1. Nevada Revised Statute § 616C.215 provides in relevant part:

   2. When an employee receives an injury for which compensation is payable pursuant to the provisions of chapters 616A to 616D, inclusive, or chapter 617 of NRS and which was caused under circumstances creating a legal liability in some person, other than the employer or a person in the same employ, to pay damages in respect thereof:

   \*　　\*　　\*

   (b) If the injured employee ... receive[s] compensation pursuant to the provisions of chapters 616A to 616D, inclusive, or chapter 617 of NRS, the insurer, or in case of claims involving the uninsured employers' claim fund or a subsequent injury fund the administrator, has a right of action against the person so liable to

*sars Palace,* 102 Nev. 79, 715 P.2d 1070 (1986) (affirming statutory right of worker's compensation insurer or self-insured employer to a lien on the "total proceeds" of any recovery, but holding that insurer, in exercising the lien, must absorb a proportionate share of the litigation expenses that were incurred for the recovery). Where there is a recovery from a third-party tortfeasor, the ultimate payment of medical expenses is not by worker's compensation, but by the injured party herself.

Rubin and State Farm disagree as to whether this should be interpreted as a situation in which "worker's compensation benefits are required to be payable," as required to trigger State Farm's exclusionary provision. Rubin argues that the worker's compensation payments are, in practical effect, only an advancement of medical expenses which were repaid from her recovery from the third-party tortfeasor. She contends that in light of SIIS's reimbursement, worker's compensation benefits were *not* required to be payable and thus State Farm's exclusionary provision does not apply. Rubin alternatively argues that even if the exclusionary provision does apply, it is invalid because it violates Nevada public policy. She asserts that enforcement of the provision can deny the injured party a full recovery from his or her injuries because the injured party's recovery is likely to be less than complete, due to attorney fees and the compromise nature of most tort settlements. State Farm disagrees, contending that the medical expenses were initially payable by SIIS and that the exclusionary provision is an enforceable anti-duplication provision, analogous to the exclusionary provision at issue in *Phelps,* that fully comports with Nevada law and public policy concerns. We have found no Nevada case law that directly addresses the legal questions and policy concerns raised in this setting.

Rubin argues that the most analogous Nevada case is not *Phelps,* but *Maxwell v. Allstate Insurance Companies,* 102 Nev. 502, 728 P.2d 812 (1986). In *Maxwell,* Allstate paid the medical expenses of its policy-holder, but then filed suit to enforce a clause in its policy that provided that the insurer shall be subrogated to its insured's claim against a third-party tortfeasor. The Nevada Supreme Court refused to enforce the clause on public policy grounds. *See id.* at 814–15. The court explained that "[s]ubrogation is a windfall to the insurer. It plays no part in the rate schedules (or only a minor one), and no reduction is made in insuring interests where the subrogation right will obviously be worth something." *Id.* at 815 (citation omitted). The court noted that the insured person must bear the total costs of any suit, including attorney fees, while the insurer collects one hundred percent of the payments it has made with no corresponding obligation for expenses. *See id.* The court then stated:

> Further, the injured person may be unable to fully recover his actual damages. The injured person often must compromise his claim, either because of the liability problems or because of limited coverage carried by the tortfeasor.... The injured person suffers "out-of-pocket" losses, such as loss of income or earning power and the costs of asserting the claim and non-economic losses such as physical pain and mental anguish which are often not monetarily indemni-

pay damages and is subrogated to the rights of the injured employee or of his dependents to recover therefor.

\*       \*       \*

5. In any case where the insurer or the administrator is subrogated to the rights of the injured employee or of his dependents as provided in subsection 2 or 3, the insurer or the administrator has a lien upon the total proceeds of any recovery from some person other than the employer, whether the proceeds of such recovery are by way of judgment, settlement or otherwise. The injured employee, or in the case of his death his dependents, are not entitled to double recovery for the same injury, notwithstanding any act or omission of the employer or a person in the same employ which was a direct or proximate cause of the employee's injury.

fiable. Yet under a subrogation clause the plaintiff's insurer is assured full reimbursement for its medical expense payments regardless of whether the injured person's tort recovery fully covers his actual damages. Thus, if an insured were permitted to assert a subrogation right the injured person may recover neither his actual damages nor the benefit of the premiums he has paid.... If subrogation were permitted, the injured person may recover nothing for medical expenses.

*Id.* (internal citations omitted).

*Maxwell,* which was decided twenty years before *Phelps,* is limited to the subrogation of medical payments. Nonetheless *Maxwell* does address certain policy implications regarding insurance recovery. However, the different posture of the *Maxwell* case, and the Nevada Supreme Court's subsequent decision in *Phelps,* leave us unsure as to *Maxwell*'s applicability.

### QUESTIONS CERTIFIED TO THE NEVADA SUPREME COURT

The two questions that we certify to the Nevada Supreme Court are:

1. Under Nevada law, does a provision in an automobile insurance policy excluding coverage for medical expenses resulting from bodily injury for which worker's compensation is payable apply to medical expenses that are paid by worker's compensation but recovered from a third-party tortfeasor?

2. If the exclusionary clause is interpreted to be applicable to those expenses, does it violate Nevada public policy?

We do not intend by our phrasing of the questions to restrict the Nevada Supreme Court's consideration of this request. We acknowledge that, in its discretion, the Nevada Supreme Court may reformulate the questions.

## CONCLUSION

Rubin's appeal presents an issue of Nevada state law which may be determinative of the parties' dispute and as to which there is no clearly controlling precedent of the Nevada Supreme Court. For this reason, we request the Nevada Supreme Court to accept and decide the questions herein certified. We agree to abide by the Nevada Supreme Court's decision as specified by Rule 5 of the Nevada Rules of Appellate Procedure, which states that "[t]he written opinion of the Supreme Court stating the law governing the questions certified ... shall be res judicata as to the parties."

IT IS SO ORDERED.

Respectfully submitted,

Procter Hug, Jr., Chief Judge, Dorothy W. Nelson and M. Margaret McKeown, Circuit Judges.