STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPA-
NY, Respondent,

v.

GREAT WEST CASUALTY
COMPANY, Petitioner,
Appellant.

No. C9–00–566.

Supreme Court of Minnesota.

April 5, 2001.

Stempel & Associates, Michael W. Lowden, Hopkins, for appellant.

Meagher & Geer, P.L.L.P., William M. Hart, Melissa Dosick Riethof, Minneapolis, for respondent.

## OPINION

GILBERT, Justice.

This case involves a dispute between two insurance companies regarding the Minnesota No Fault Automobile Insurance Act ("No Fault Act") indemnification provision, which is contained in Minn.Stat.

§ 65B.53, subd. 1 (2000). Great West Casualty Company, the insurer of a Nebraska commercial trucking company, appeals from the court of appeals' holding that section 65B.53, subdivision 1 requires Great West to indemnify State Farm Mutual Automobile Insurance Company for basic economic loss benefits State Farm paid to its Minnesota policyholder as a result of an accident that occurred between the Minnesota and Nebraska policyholders on Nevada roads. Great West argues in the alternative that even if Minnesota's statute requires indemnification, Nevada law, which has no motor vehicle indemnity statute, governs this case under a choice-of-law analysis. Because the accident occurred outside Minnesota, we conclude that Minnesota's No Fault Act does not require Great West to indemnify State Farm based on the Nebraska insurance policy Great West issued to its nonresident policyholder. We therefore reverse.

The facts of this case are not disputed. On October 29, 1996, Mark Anderson, a Minnesota resident, was driving his pickup truck home to Minnesota from California. At about 10:30 p.m., Anderson was driving on Interstate Highway 80 in Lander County, Nevada when a semi-tractor trailer driven by professional truck driver Larry Thiemann and owned by Hollis Trucking Company rear-ended Anderson's automobile. Anderson suffered extensive injuries.

At the time of the accident, Anderson was domiciled in Minnesota and had an insurance policy issued by State Farm. In contrast, Hollis Trucking's principal place of business was Nebraska, Thiemann was domiciled in Nebraska, and Hollis had a commercial lines insurance policy issued by Great West Casualty Company in Nebraska. Great West is licensed to write insurance in Minnesota and has filed Motor Carrier Certificates of Insurance in both Minnesota and Nebraska in compliance with Minn.Stat. § 65B.50, subd. 1

(2000) and Neb.Rev.Stat. § 60–529 (2000). Nevada does not require insurers to file a certification of coverage in most circumstances. Nev.Rev.Stat. § 482.390 (1999).

Under Minnesota's No Fault Act, State Farm paid Anderson no-fault benefits totaling $43,015.53 for medical expenses and lost wages. State Farm then sought indemnity for those payments from Great West under Minn.Stat. § 65B.53, subd. 1, which requires reparation obligors[1] providing residual liability coverage on commercial vehicles to indemnify reparation obligors paying no-fault benefits if negligence in the operation of the commercial vehicle caused the injury. This provision can only be enforced through binding arbitration. Minn.Stat. § 65B.53, subd. 4 (2000).

Great West refused to submit to arbitration. As a result, State Farm petitioned Hennepin County District Court for an order compelling Great West to participate in binding arbitration. In response, Great West claimed that it was not obligated to arbitrate because, under these facts, it is not a "reparation obligor" within the meaning of section 65B.53, subdivision 1 and therefore has no duty to indemnify State Farm. Even if Minnesota law would require Great West to indemnify State Farm, Great West argued that Nevada law, which does not include an indemnification statute comparable to Minn.Stat. § 65B.53, subd. 1, governs. The district court granted State Farm's motion, determining that Minnesota law applied instead of Nevada law and that "[n]othing in Minn. Stat. § 65B.53 limits State Farm to indemnification only for accidents occurring within the State of Minnesota." The court of appeals denied Great West's subsequent petition for intermediate discretionary review of the order compelling arbitration.

Great West then submitted to arbitration, where it was found that Thiemann was 70% at fault for the accident. Upon entry of judgment on the arbitration award in favor of State Farm, Great West appealed to the court of appeals. The court affirmed, holding that Minnesota law applies and that Minn.Stat. § 65B.53, subd. 1 requires Great West to indemnify State Farm because the section "includes no language restricting it to accidents in Minnesota" and no other statute precludes the application of section 65B.53, subdivision 1 to accidents that occurred outside Minnesota. *State Farm Mut. Auto. Ins. Co. v. Great W. Cas. Co.*, 615 N.W.2d 871, 874 (Minn.App.2000).

On appeal, we are asked to determine whether the lower courts correctly determined that Minn.Stat. § 65B.53, subd. 1 requires Great West to indemnify State Farm. This application of the law to a particular set of facts is a question of law, which we review de novo. *Morton Bldgs., Inc. v. Comm'r of Revenue*, 488 N.W.2d 254, 257 (Minn.1992).

Before determining whether Minnesota law or Nevada law applies, the threshold question is whether there is a conflict between those laws that would affect the outcome of this case. *Myers v. Gov't Employees Ins. Co.*, 302 Minn. 359, 363, 225 N.W.2d 238, 241 (1974). Nevada has not enacted a no-fault act and Nevada statutes contain no counterpart to Minn. Stat. § 65B.53, subd. 1. *See Maxwell v. Allstate Ins. Co.*, 102 Nev. 502, 728 P.2d 812, 813 (1986). However, this conflict is outcome determinative only if Minnesota's law actually requires Great West to indemnify State Farm and Nevada law does not.[2] *See Blamey v. Brown*, 270 N.W.2d 884,

---

1. A "reparation obligor" is defined in Minnesota Statutes as "an insurer or self-insurer obligated to provide the benefits required by sections 65B.41 to 65B.71, including natural persons, firms, partnerships, associations, corporations, governmental units, trusts and

syndicates." Minn.Stat. § 65B.43, subd. 9 (2000).

2. Great West also argues that there is an outcome determinative conflict between Minnesota and Nevada law because Minneso-

889–90 (Minn.1978) (disposing of conflict of law issue on grounds of statutory interpretation because the conclusion that Minnesota's Civil Damages Act did not apply to Wisconsin resident rendered Wisconsin law controlling and made analysis of choice-influencing considerations unnecessary); *overruled on other grounds, West Am. Ins. Co. v. Westin, Inc.*, 337 N.W.2d 676, 679–80 (Minn.1983); *cf. Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 604 N.W.2d 91, 93–4 (Minn.2000) (noting that a choice of law analysis was necessary where the interpretation of Minnesota and North Dakota laws was clear and there was an obvious outcome determinative conflict between the states' laws). We therefore begin with the statutory interpretation question.

Minnesota Statutes § 65B.53, subd. 1, which is the indemnity provision on which State Farm relies to obtain payment from Great West, states:

> A reparation obligor paying or obligated to pay basic or optional economic loss benefits is entitled to indemnity subject to the limits of the applicable residual liability coverage from a reparation obligor providing residual liability coverage on a commercial vehicle of more than 5,500 pounds curb weight if negligence in the operation, maintenance or use of the commercial vehicle was the direct and proximate cause of the injury for which the basic economic loss benefits were paid or payable to the extent that the insured would have been liable for damages but for the deduction provisions of section 65B.51, subdivision 1.

Minnesota Statutes § 65B.53, subd. 4 provides that this right of indemnity is enforceable "only through mandatory good-faith and binding arbitration procedures * * *."

■ Great West agrees that State Farm is a reparation obligor that paid basic economic loss benefits and that Thiemann was driving a commercial vehicle of more than 5,500 pounds curb weight, and it does not dispute the arbitrator's finding that Thiemann was 70% responsible for the accident. Given these admissions, both the district court and court of appeals concluded that Great West is obligated to indemnify State Farm simply because section 65B.53 does not explicitly state that it does not apply where the commercial insured was a nonresident policyholder involved in an out-of-state accident. Although the lower courts were correct in noting that section 65B.53, subdivision 1 does not expressly state the scope of the indemnification requirement, provisions of the No–Fault Act should not be construed in isolation from related sections of the Act. *Western Nat'l Mut. Ins. Co. v. State Farm Ins. Co.*, 374 N.W.2d 441, 445 (Minn.1985). For example, the very use of the term "reparation obligor" in section 65B.53, subdivision 1 implicates at least Minn.Stat. § 65B.43, subd. 9, which defines this term. Accordingly, we turn to other provisions of the No Fault Act to address Great West's argument that in this case it is not a reparation obligor obligated by section 65B.53, subdivision 1 to submit to arbitration and indemnify State Farm.

Although Great West does not dispute that it is an insurer, it argues that it is not

ta has a 6–year statute of limitations on indemnity actions running from the date of the first benefit payment, while Nevada has a 2–year limitations period running from the date of the accident. *Compare Metro. Prop. & Cas. Ins. Co. v. Metro. Transit Comm'n*, 538 N.W.2d 692, 694 (Minn.1995) with *State Farm Mut. Auto. Ins. Co. v. Wharton*, 88 Nev. 183, 495 P.2d 359, 361 (1972). Here, State Farm brought its action seeking indemnity 29 months after the accident, so its action would be timely under Minnesota law but not under Nevada law. Nevada courts, however, abolished the contractual right to subrogation after *Wharton* was decided and the Nevada legislature has not established a statutory right to indemnification. *Maxwell*, 728 P.2d at 813. As a result, Nevada's statute of limitations on indemnification actions is not dispositive if Nevada law is applicable because the Nevada law gives parties no substantive right to indemnity.

a reparation obligor in this situation because it is not "obligated to provide the benefits required" by the No–Fault Act. *See* Minn.Stat. § 65B.43, subd. 9. We agree.

Under the various subdivisions of Minn. Stat. § 65B.49 (2000), reparation obligors are required to provide basic economic loss coverage, residual liability coverage, and underinsured and uninsured motorist coverages. However, section 65B.49 must also be interpreted in conjunction with the following statute, Minn.Stat. § 65B.50, subd. 1, which provides that:

> Every insurer licensed to write motor vehicle accident reparation and liability insurance in this state shall, * * * as a condition to such licensing, file with the commissioner and thereafter maintain a written certification that it will afford at least the minimum security provided by section 65B.49 to all policyholders, *except that in the case of nonresident policyholders it need only certify that security is provided with respect to accidents occurring in this state.*

(Emphasis added.) Furthermore, Minn. Stat. § 65B.50, subd. 2 (2000) states that "every contract of liability insurance for injury, wherever issued, * * * includes basic economic loss benefit coverages and residual liability coverages required by sections 65B.41 to 65B.71, *while the vehicle is in this state.*" (Emphasis added.)

Reading subdivisions 1 and 2 of section 65B.50 in conjunction with the definition of "reparation obligor" in section 65B.43, subdivision 9, one of two factors is required for an insurer to be considered a reparation obligor under Minnesota's No–Fault Act: the first is the issuance of a Minnesota insurance policy to a Minnesota resident, and the second is the involvement of an insured motor vehicle in an accident occurring within Minnesota. Neither factor is present with regard to Great West in the instant case because Great West issued a Nebraska policy to a Nebraska policyholder and the accident occurred in Nevada. Great West therefore is not a "reparation obligor" under these facts and does not have a reparation obligor's duty to indemnify State Farm pursuant to Minn. Stat. § 65B.53, subd. 1.[3]

Our holding in *Western National Mutual Automobile Insurance Co. v. State Farm Insurance Co.* is consistent with this construction of Minn.Stat. §§ 65B.50 and 65B.53, subd. 1, 374 N.W.2d 441 (Minn. 1985). In *Western National,* we determined that an out-of-state insurer licensed to do business in Minnesota was not liable to pay no-fault benefits to its insured passenger injured in a Minnesota accident where the insured's vehicle was not in Minnesota. *Id.* at 444–45; *accord Reed v. Cont'l W. Ins. Co.,* 374 N.W.2d 436, 438 (Minn.1985). In concluding that coverage followed the insured vehicle under Minn. Stat. § 65B.50, subd. 1 rather than the policyholder, we noted that a different conclusion would

> impose on an insurer of vehicles owned and garaged by nonresidents in foreign states an unreasonable and economically heavy burden of being compelled to attempt to adjust premiums to reflect the highly unpredictable likelihood that the nonresident might be entitled to benefits under the Minnesota No Fault Act even if they entered this state by public transportation * * *.

*Western National,* 374 N.W.2d at 444.

State Farm argues that this policy consideration is irrelevant to the instant case

---

3. In addition to the indemnification requirement in Minn.Stat. § 65B.53, subd. 1, Minn. Stat. § 65B.49, subd. 3(2) (2000) states "A reparation obligor shall also be liable to pay sums which another reparation obligor is entitled to recover under the indemnity provisions of section 65B.53, subdivision 1." This language does not add to our analysis because it merely reiterates that a reparation obligor may have indemnification responsibilities. Great West is not a reparation obligor; thus, section 65B.49, subdivision 3(2) does not require it to "pay sums * * * under the indemnity provisions of section 65B.53, subdivision 1."

because *Western National* involved the importation of economic loss coverage into a non-Minnesota contract. According to State Farm, section 65B.53 does not import additional coverage into Great West's insurance contract with Hollis Trucking, which State Farm admits would be contrary to section 65B.50, but merely requires that the preexisting residual liability coverage in the insurance policy be invoked to indemnify State Farm. State Farm further argues that insurers such as Great West should be compelled to adjust policy premiums, regardless of the insured's activities, simply because the insurance company is licensed to do business in Minnesota.

Despite these arguments, we find the reasoning in *Western National* applicable here. Indemnifying another insurer, like paying basic economic loss benefits, involves an outlay of money that affects premium schedules even though the sums will be paid to insurers rather than insureds. Furthermore, insurers of Minnesota policyholders necessarily charge premiums for no-fault coverage because Minnesota law requires its insurers to pay no-fault benefits regardless of whether there is any possibility of reimbursement. *See Nodak,* 604 N.W.2d at 95. Like the insurer in *Western National,* however, Great West had little reason to charge premiums based on the remote possibility of a duty to indemnify under Minnesota law. Thus, Minn.Stat. § 65B.50, subd. 1 protects insurers such as Great West from the unreasonable burden of adjusting premiums based on the "highly unpredictable likelihood" that they will be required to indemnify a Minnesota insurer even where the insured tortfeasor was not involved in an accident in Minnesota and did not contract for a Minnesota insurance policy. *Western National,* 374 N.W.2d at 444.

For these reasons, we hold that Minn.Stat. § 65B.53, subd. 1 does not re-

quire Great West, an insurer of a nonresident policyholder, to indemnify State Farm for basic economic loss benefits paid to its insured as a result of an out-of-state accident. Because Great West would have no duty to indemnify State Farm under Minnesota law, there is no outcome determinative conflict between the laws of Minnesota and Nevada and it is not necessary to complete the choice of law analysis. Accordingly, we reverse.

Reversed and remanded to the district court so that judgment may be entered in accordance with this opinion.