RAINA LEE BREEN, Widow of JOHN J. BREEN, Deceased, and MARK ANTHONY BREEN and CRYSTAL FAY BREEN, Infants, by RAINA LEE BREEN, as Their Guardian, and JOHN JOSEPH BREEN, Infant, by DEBRA ANN MEYERS, as His Guardian, Appellants, v. CAESARS PALACE, a Nevada Corporation, Respondent.

No. 16164

March 13, 1986                                  715 P.2d 1070

*Vannah, Roark & Madson* and *Stephen G. Snyder,* Las Vegas, for Appellants.

*King, Clark, Gross & Sutcliffe,* Las Vegas, for Respondent.

# OPINION

*Per Curiam:*

In this appeal appellants challenge a district court order upholding an appeals officer's decision to permit a self-insured employer to assert a subrogation lien against the proceeds of a third-party malpractice settlement. We affirm the order insofar as it permits the employer to assert the lien but reverse and remand with instructions for a determination of the proper scope of the lien.

## THE FACTS

On June 13, 1981, John J. Breen (hereafter "Decedent") was refueling a portable stove in the course of his duties as a banquet chef for respondent Caesars Palace (hereafter "Caesars") when the stove exploded causing Decedent to suffer serious but apparently non-fatal burns over 35% of his body. Decedent was admitted to Southern Nevada Memorial Hospital where he died two days later from an accumulation of fluid in his lungs.

Caesars, a self-insured employer, paid Decedent's medical bills, burial expenses and pension benefits to appellants, Decedent's wife and three minor children.

In a malpractice suit filed against Decedent's treating physicians and the hospital, appellants alleged that Decedent's death was not caused by the burns but by negligent medical treatment. Specifically, appellants alleged that the doctors had pumped fluids into Decedent faster than his body could expel them, causing his lungs to fill with fluid and drown him.

Caesars filed a subrogation lien against the prospective settlement proceeds on July 27, 1983. Appellants settled the malpractice suit against the doctors and hospital for $1,000,000.00 on August 18, 1983. At the time of settlement, Caesars had dis-

bursed $39,728.16 in benefits to appellants. Caesars had also reserved $650,000.00 as future pension benefits.

Appellants reimbursed Caesars the $39,728.16 in benefits out of the $1,000,000.00 settlement. In its letter acknowledging the receipt of the $39,728.16, Caesars broke down the settlement per appellant and declared the offset it was claiming as to each appellant's pension benefits. Caesars stopped paying pension benefits at the time of the settlement.

Appellants challenged the propriety of Caesar's subrogation interest in the malpractice settlement proceeds before a Department of Administration hearing officer. The hearing officer, the appeals officer and the district court all found for Caesars, concluding that, pursuant to NRS 616.560, Caesars was entitled to assert a subrogation lien against the malpractice settlement proceeds for the entire amount due appellants under worker's compensation. From the district court's order affirming the decision of the appeals officer, appellants bring this appeal.

## DISCUSSION

Pursuant to NRS 616.560[1] an employer may assert a subrogation interest in compensation paid to an employee by a third-party

---

[1]NRS 616.560 provides in pertinent part:

1. When an employee coming under the provisions of this chapter receives an injury for which compensation is payable under this chapter and which injury was caused under circumstances creating a legal liability in some person, other than the employer or a person in the same employ, to pay damages in respect thereof:

(a) The injured employee, or in case of death, his dependents, may take proceedings against that person to recover damages, but the amount of the compensation to which the injured employee or his dependents are entitled under this chapter, including any future compensation under this chapter, must be reduced by the amount of the damages recovered, notwithstanding any act or omission of the employer or a person in the same employ which was a direct or proximate cause of the employee's injury.

(b) If the injured employee, or in case of death his dependents, receive compensation under this chapter, the insurer has a right of action against the person so liable to pay damages and is subrogated to the rights of the injured employee or of his dependents to recover therefor. In any action or proceedings taken by the insurer under this section evidence of the amount of compensation, accident benefits and other expenditures which the insurer has paid or become obligated to pay by reason of the injury or death of the employee is admissible. If in such action or proceedings the insurer recovers more than the amounts it has paid or become obligated to pay as compensation, the excess must be paid to the injured employee or his dependents.

(c) The injured employee, or in the case of death his dependents, shall first notify the insurer in writing of any action or proceedings, pursuant to this section, to be taken by the employee or his dependents.

2. In any case where the insurer is subrogated to the rights of the

tortfeasor where a work-related "injury was caused under circumstances creating a legal liability" in a third party. Injury is defined in the Nevada Industrial Insurance Act (NIIA) as "a sudden and tangible happening of a traumatic nature, producing an immediate or prompt result." NRS 616.110(1). Appellants contend that Caesars may not assert a subrogation lien on the malpractice settlement because the malpractice injury was severable from the work-related injury; appellants argue that the definition of injury does not encompass the aggravation of an original injury by medical malpractice.

We conclude, however, that the aggravation of an injury by medical malpractice is within the scope of risks created at the time the original injury occurs. Since an employer must compensate the employee for the aggravation of the injury[2] it stands to reason that the employer should be able to seek reimbursement from the third party via a subrogation lien. We will not construe a statute to produce an unreasonable result when another interpretation will produce a reasonable result. *See* Alper v. State ex rel. Dep't of Hwys., 96 Nev. 925, 930, 621 P.2d 492 (1980). Appellants construction of the statute would indeed produce an unreasonable result by permitting an employee to recover twice for the same injury. The statutory scheme itself contemplates that an employee should not be allowed to receive a double recovery. NRS 616.560(2) provides that an "employee, or in the case of his death his dependents, are not entitled to double recovery for the same injury." In holding that an employer is entitled to reimbursement from malpractice proceeds we join the overwhelming majority of jurisdictions which have construed their statutes to permit subrogation under similar circumstances. *See* 2A Larson, *Law of Workmen's Compensation* §§ 72.61(a), 72.65(e) (1983).

Having decided that Caesars' assertion of a subrogation lien was proper, we now determine the scope of that lien. The district

injured employee or of his dependents as provided in subsection 1, the insurer has a lien upon the total proceeds of any recovery from some person other than the employer, whether the proceeds of such recovery are by way of judgment, settlement or otherwise. The injured employee, or in the case of his death his dependents, are not entitled to double recovery for the same injury, notwithstanding any act or omission of the employer or a person in the same employ which was a direct or proximate cause of the employee's injury.

3. The lien provided for under subsection 2 includes the total compensation expenditure incurred by the insurer for the injured employee and his dependents.

[2]Jurisdictions which have addressed the issue universally hold that an "employer is liable in compensation for aggravation of a compensable injury by a physician's negligence." 2A Larson, *Law of Workmen's Compensation* § 72.61(c) (1983). This is the apparent policy of the Department of Administration and is uncontested by Caesars in this appeal.

court concluded that Caesars could discontinue paying benefits to appellants until the entire $1,000,000.00 settlement had been offset. Appellants contend that pre-malpractice medical expenses, non-economic damages and attorney's fees and costs must first be deducted from the settlement before calculating Caesars' lien. Caesars argues that the statutory language makes no provision for adjusting the amount of the lien but instead provides that the "insurer has a lien upon the *total proceeds* of any recovery from" a third party. NRS 616.560(2) (emphasis added).

To determine whether the legislature intended to give insurers an unrestricted lien on third-party recoveries when it used the phrase "total proceeds," we may look to the purpose of the statute as a whole as evidenced by the statutory scheme. *See* Colello v. Administrator, Real Est. Div., 100 Nev. 344, 683 P.2d 15 (1984). It is unquestionably the purpose of worker's compensation laws "to provide economic assistance to persons who suffer disability or death as a result of their employment." SIIS v. Jesch, 101 Nev. 690, 709 P.2d 172 (1985). "This court has a long-standing policy of liberally construing these laws to protect workers and their families." *Id.* Mindful of these guidelines, we proceed to analyze each of the deductions claimed by appellants.

### Pre-Malpractice Medical Expenses

Appellants contend that Caesars should reimburse them for $4,860.34 in medical expenses which accrued before the medical malpractice occurred. Presumably the malpractice settlement compensated appellants only for expenses related to the malpractice; appellants will not be compensated for expenses that accrued before the malpractice if Caesars is allowed to obtain reimbursement out of the settlement proceeds for expenses unrelated to the malpractice.

A literal reading of NRS 616.560(3) would, however, permit insurers to recoup expenses out of third-party proceeds even though the proceeds had not compensated the employee for those expenses:

> The lien provided for under subsection 2 includes the *total compensation expenditure* incurred by the insurer for the injured employee and his dependents.

NRS 616.560(3) (emphasis added).

" 'The leading rule for the construction of statutes is to ascertain the intention of the legislature in enacting the statute, and the intent, when ascertained will prevail over the literal sense.' [citations omitted]." Welfare Div. v. Washoe Co. Welfare Dep't, 88

Nev. 635, 637, 503 P.2d 457 (1972). We decline to read NRS 616.560(3) literally as it is evident that the statutory scheme was designed to accommodate situations where the work-related injury and third-party tortious conduct occur simultaneously. In the usual situation, medical expenses for the work-related injury and the third-party injury will not be severable. Other jurisdictions which have had to deal with similar statutory gaps have held that the insurer's lien extends only to the expenses attributable to the medical aggravation of the injury. "In other words the amount of the employer's lien is limited to the amount that he is required to pay because of the malpractice." Heaton v. Kerlan, 166 P.2d 857, 861 (Cal. 1946); *see also* Drypolcher v. New York Tel. Co., 446 N.Y.S.2d 728, 729 (App.Div. 1981) (employer may not recoup through subrogation lien "any sums expended prior to the occurrence of the malpractice"); 2A Larson, *Law of Workmen's Compensation* § 72.65(b) (1983) (citing *Heaton* as achieving fair and sensible results in face of statute that fails to segregate payments for original and aggravated portions of a compensable injury).

We conclude that the legislative intent to compensate injured employees should prevail over the literal reading of the statute. Caesars must reimburse appellants for the $4,860.34 in medical expenses that accrued prior to the malpractice.

### Attorney's Fees and Costs

We next determine whether Caesars' lien should extend to only two-thirds of the settlement proceeds because appellants paid one-third of the proceeds in attorney's fees and costs. NRS 616.560 makes no provision for the allocation of these expenses between the insurer and the injured employee.

"Under third-party statutes containing no reference to fees and costs, the majority of courts currently hold that the carrier or employer may be charged with a proportionate share of the costs and attorneys' fees incurred by the employee in the third-party suit." 2A Larson, *Law of Workmen's Compensation* § 74.32(a)(3) (1983). Jurisdictions which have held an employer liable for a proportionate share of litigation expenses in the absence of an authorizing statute have done so on principles of equity and unjust enrichment:

> Where no guidance is given . . . fundamental fairness must be the guidelines. In the instant case it was the claimant who bore the burden of the expense and risk of litigation of the third party action. It would be unduly burdensome on the claimant to pay all of the expenses and by the same token it would unjustly enhance the economic position of the carrier not to assess a portion of the costs against it.

Transport Indemnity Company v. Garcia, 522 P.2d 473, 476 (N.M. Ct.App. 1976). *See also* Security Insurance Company of Hartford v. Norris, 439 S.W.2d 68, 70 (Ky. 1969) (employer/insurer's liability for litigation costs based on principles of equity, fairness and justice, such as are invoked in cases of unjust enrichment).

We conclude that Caesars would be unjustly enriched if it were permitted to assess its lien against the total proceeds of the settlement without bearing its share of litigation expenses. Caesars will have obtained a substantial benefit, the almost complete extinguishment of its obligation to appellants, at appellants' expense if Caesars is not held accountable for a proportionate share of the costs of obtaining the settlement. We are unable to determine the parties' proportionate shares of the attorney's fees and costs on the record before us. We instruct the district court to determine upon remand the parties' respective shares according to the following formulas:

$$\text{Caesars' share} = \frac{\text{Total amount of lien}}{\text{Settlement}-(\text{fees and costs})}$$

$$\text{Appellants' share} = \frac{\text{Excess recovery over amount due under NIIA}}{\text{Settlement}-(\text{fees and costs})}$$

To illustrate how these formulas work, we provide the following hypothetical. Suppose the district court determines Caesars' lien to be $650,000.00. Appellants' excess recovery is then computed by deducting attorney's fees, costs and Caesars' lien from the total settlement: $1,000,000.00 - 333,333.33 - 650,000.00 = $16,666.66. By inserting these figures into the formulas, we arrive at the parties' proportionate shares:

$$\text{Caesars' share} = \frac{650,000.00}{1,000,000.00 - 333,333.33} = .975$$

$$\text{Appellants' share} = \frac{16,666.66}{1,000,000.00 - 333,333.33} = .025$$

Caesars thus bears 97.5% of the litigation expenses; appellants bear the remaining 2.5%.[3]

[3] If Caesars' lien equals or exceeds $666,666.66, Caesars will, obviously, bear the total litigation expense.

*Non-economic Damages*

In their malpractice suit, appellants sought compensation for non-economic losses, i.e., the loss of Decedent's society, association, protection, etc. Non-economic losses are not compensable under the NIIA. Therefore appellants contend that Caesars' subrogation lien should extend only to that portion of the malpractice proceeds attributable to economic losses.

The prevailing rule in the United States has been to allow an employer to reach an entire award or settlement even where the non-economic damages have been segregated and identified. 2A Larson, *Law of Workmen's Compensation* § 74.35 (1983). In United States v. Lorenzetti, 467 U.S. 167, 104 S.Ct. 2284 (1984), a federal employee was injured in a car accident in the course of his employment. He received payment for his medical expenses and lost wages under the Federal Employees' Compensation Act (FECA) which, like the NIIA, does not compensate victims for non-economic damages. The employee recovered only damages for pain and suffering from the driver of the other car because the no-fault insurance system in effect limited the other driver's liability to non-economic damages. The Supreme Court held that the Government was entitled to reimbursement from the third-party award even though the award was for damages not compensable under FECA. The Court reasoned that Congress knew that third-party recoveries might encompass compensation for pain and suffering when it enacted FECA with the provision giving the Government an unrestricted right of reimbursement. Had the Legislature wanted to restrict the right of reimbursement, the Court concluded, it could have done so. "It is for Congress, not the courts, to revise longstanding legislation in order to accommodate the effects of changing social conditions. Congress simply has not done so here." *Id.* at ......, 104 S.Ct. at 2292.

In interpreting their state worker's compensation statutes, other courts have been influenced by language in the statute permitting the employer a subrogation right in the "total" proceeds. The Arizona Supreme Court held that an insurer's lien extended to the employee's entire third-party recovery, including items not covered by worker's compensation, because the statute speaks of "total recovery." *See* Hendry v. Industrial Commission, 538 P.2d 382 (Ariz. 1975), *cert. denied,* 424 U.S. 923 (1976). The court concluded that the statutory language was controlling even if it did produce an inequitable result.

We similarly conclude that we are bound by the statutory language which gives an insurer a subrogation interest in the "total proceeds." It is the legislature's prerogative, not this

court's, to correct any injustice occasioned by a literal reading of the statute. The rules of statutory construction which enabled us to liberally construe NRS 616.560 with respect to the payment of pre-malpractice medical expenses and attorney's fees and costs are not applicable here. With respect to this issue, there is no room for statutory interpretation; the language of the statute is plain and no legislative purpose would be served by deviating from the literal language. *See* Spencer v. Harrah's, Inc., 98 Nev. 99, 641 P.2d 481 (1982).

The literal reading of the statute controls with respect to this issue because, unlike the issue of pre-malpractice medical expenses, the purpose of the statute is not thwarted by a literal reading. The NIIA was enacted to compensate injured employees for *economic* losses. Since a liberal construction would not further this purpose, we are bound by the literal language.

In concluding that Caesars should bear a proportionate share of attorney's fees and costs, we did not usurp the legislative function. We were able to reach an equitable result on that issue because of the absence of legislative guidance. Here, however, the legislature has provided that an insurer's lien extends to the "total proceeds" of a third-party recovery. We conclude that the legislature must have known that this language might permit an insurer to reach an employee's non-economic loss recovery from a third party. The legislature may well have decided that the objective of reimbursing the insurer would prevail over the employee's interest in a recovery for non-economic losses.

## CONCLUSION

This matter is remanded to the district court with instructions to determine the scope of Caesars' lien in conformance with this opinion.

MOWBRAY, C. J., SPRINGER, GUNDERSON, and YOUNG, JJ., and WHITE, D.J.,[4] concur.

---

[4]The Honorable Earle White, Jr., Judge of the Eighth Judicial District Court, was designated by the Governor to sit in place of JUSTICE THOMAS L. STEFFEN, who voluntarily disqualified himself. Nev.Const., art. 6, § 4.