STATE OF NEVADA, VICTIMS OF CRIME FUND, Appellant, v. CHRISTOPHER BARRY and NANCY BARRY, Respondents.

No. 20101

May 16, 1990                                    792 P.2d 26

*Brian McKay,* Attorney General, and *James T. Spencer,* Deputy Attorney General, Carson City, for Appellant.

*Zervas & Evans,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

Respondents Christopher and Nancy Barry were severely injured in an attack by an escaped convict. They each received compensation of $15,000.00 from appellant State of Nevada Victims of Crime Fund. Thereafter, their lawsuit relating to the attack was settled with third parties for $540,000.00. Following the settlement, the Crime Fund filed a subrogation lien for full reimbursement from the Barrys, but the Barrys maintained that they owed the Crime Fund only partial reimbursement, as calcu-

lated using the formula set forth in Breen v. Caesars Palace, 102 Nev. 79, 715 P.2d 1070 (1986). The district court found in the Barrys' favor. We hold that the *Breen* formula does not apply to this case, but note that because the subrogation statute has been amended, the *Breen* formula will apply to the Crime Fund in the future.

In *Breen,* we allowed a self-insured employer to assert a subrogation lien against the proceeds of a third-party malpractice settlement obtained by an injured employee, but required the employer to bear its share of the litigation expenses, thereby reducing the lien. *Id.* at 84-85, 715 P.2d at 1073-74. We provided a formula for calculating the employer's and the employee's share of the litigation expenses. *Id.* at 85, 715 P.2d at 1074.

The Crime Fund contends that the district court erred in determining that the *Breen* formula applies to this case. It contends that, when recipients of fund benefits recover from third parties, it should not be required to bear a portion of the litigation expenses and attorney's fees as is required of self-insured employers under *Breen,* because it is a public quasi-charitable fund. The Crime Fund argues that, unlike the private, for-profit employer in *Breen,* it does not stand to be unjustly enriched by the Barrys' recovery from third parties, and that therefore the *Breen* formula is inapplicable to this case. The Crime Fund urges us instead to follow Aylward v. Dragus, 402 N.E.2d 700, 702 (Ill.App.Ct. 1980), in which the court held that, absent statutory authority to do so, the trial court had no power to reduce a subrogation lien under the Illinois Crime Victims Compensation Act. The court observed that no court may use its equitable powers to grant a remedy which contradicts a statute. *Id.*

The Barrys, on the other hand, argue that the *Breen* formula should apply to this case. They point out that in Nevada Bell v. Hurn, 105 Nev. 211, 774 P.2d 1002 (1989), we recently rejected other formulas in favor of the *Breen* formula. The Barrys argue that allowing the Crime Fund full reimbursement would unjustly enrich the Crime Fund by giving it an unexpected windfall, and, at the same time, would unfairly burden them with the time, risk, and expense of pursuing a third-party claim.

The Crime Fund's argument is persuasive. *Breen* is distinguishable for several reasons. To begin, *Breen* and *Hurn* applied the formula against for-profit employers. In contrast, the Crime Fund is a public, not-for-profit, quasi-charitable entity. Thus, unlike Caesars Palace and Nevada Bell, if the Crime Fund were to receive full reimbursement, the money would not be counted as profit, but rather as additional benefits to be distributed to other deserving crime victims. The Crime Fund is therefore in

less of a position to be unjustly enriched than those entities currently targeted by the *Breen* formula.

In addition, in *Breen* and *Hurn* there was a preexisting employer-employee relationship between the parties; indeed, the injuries would likely not have occurred but for the employer-employee relationship because the initial injuries arose out of and in the course of the employment. In contrast, there was no pre-existing relationship between the Crime Fund and the Barrys; the Barrys' injuries did not in any way relate to the Crime Fund. Because the Crime Fund previously did not derive any benefits from a relationship with the Barrys, it is not in a position, unlike the employers in *Breen* and *Hurn,* to be unjustly enriched by subsequent full reimbursement.

Moreover, the fundamental purpose of a victim's compensation fund is to assist victims of violent crimes through a period of financial hardship which arises when their assailants are judgment proof or unknown. NRS 217.010, 217.220(5); Ayers-Schaffner v. Solomon, 461 A.2d 396, 398 (R.I. 1983). Where, as here, the victims are no longer suffering financial hardship and have recovered full economic compensation for their losses, fundamental fairness dictates in favor of full reimbursement to the Crime Fund. This conclusion is consistent with the subrogation statute then in effect, which read: "When a claimant accepts an award, the State of Nevada is subrogated *in the amount of the award* to any right of action had by the claimant for damages caused by the crime." Former NRS 217.240 (emphasis added).[1] No reduction for costs or fees was provided for by the statute. Consistent with the rationale of *Aylward,* 402 N.E.2d at 702, there appears to have been no statutory authority to reduce the lien and it would be inequitable to grant a remedy which contradicts the statute. Therefore, under the statute in effect at the time of the Barrys' Crime Fund award, it was error for the district court to apply the *Breen* formula. Accordingly, we reverse the district court's order and instruct the district court to order the Barrys to reimburse the Crime Fund in full.

---

[1]The statute has since been amended. NRS 217.240 now specifically allows for the state's subrogation right to be diminished by litigation costs and attorney's fees incurred in obtaining a recovery from a third party. Thus, in the future, the formula from *Breen* should indeed apply to determine the Crime Fund's proportionate share of the fees and costs incurred by a fund recipient who recovers from a third party.