CONTINENTAL CASUALTY CO., an Illinois Corporation, Appellant, v. AUGUST M. RIVERAS, Respondent.

No. 21073

July 12, 1991                                814 P.2d 1015

[Rehearing denied October 8, 1991]

*Vaughan, Hull, Copenhaver & Zingale,* Elko, for Appellant.

*Goicoechea & DiGrazia, Ltd.,* Elko, for Respondent.

## OPINION

*Per Curiam:*

Respondent August M. Riveras filed an action for declaratory judgment seeking to vindicate his contention that an offset provision pertaining to uninsured/underinsured ("UM") coverage contained in a policy of insurance issued by appellant Continental Casualty Co. violated public policy and was therefore void. The district court agreed and found that Riveras was entitled to recover an additional $31,679.32 plus interest from Continental. Convinced that the lower court erred in its judgment, we reverse.

### Facts

On November 6, 1987, Riveras, an employee of the Elko County School District ("School District") was in an accident while driving a school bus for his employer. Riveras was an insured under an automobile liability insurance policy issued by Continental to the School District. The accident occurred when Riveras was forced off the road by an oncoming vehicle. The driver of the oncoming vehicle was attempting to pass another vehicle without sufficient road room.

Dairyland Insurance Co., insurer of the third-party driver who caused the accident, paid Riveras $15,000.00 in partial compensation for his injuries. In an effort to resolve their differences, Riveras and Continental entered into a settlement agreement and release which states:

Claimant [Riveras] and Company have agreed that the total amount of damages suffered by Claimant is the sum of NINETY THOUSAND DOLLARS ($90,000.00). Claimant hereby acknowledges that he has previously recovered the sum of FIFTEEN THOUSAND DOLLARS ($15,000.00) from Dairyland Insurance Company. Therefore, the total amount agreed upon as damages to be settled between Claimant and Company is the sum of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00).[1]

Riveras received $41,678.58 from the State Industrial Insurance System ("SIIS") in benefits. SIIS asserted a lien against the money Riveras received from Dairyland and Continental, thereby inducing Riveras to reimburse SIIS in the amount of $18,351.41. Ten thousand dollars of the reimbursement came from the Dairyland settlement and the remaining amount came from the sum of $43,320.68 that Continental had paid Riveras.[2]

Riveras' declaratory judgment action was directed against the validity of the offset provision in the Continental policy that states: "any amount payable under this coverage shall be reduced by . . . all sums paid or payable under any worker's compensation, disability benefits or similar law." As previously noted, the district court determined that the offset provision was void as against public policy and consequently held that Continental owed Riveras an additional $31,679.32 plus interest.

---

[1]Riveras contends that the settlement agreement did not establish the total damages which Riveras suffered from the accident, but rather it fixed the amount of damages which Riveras could seek under the UM coverage provided by Continental. We do not agree. The clear wording of the agreement states at the outset that "Claimant [Riveras] and Company [Continental] have agreed that the total amount of damages suffered by Claimant is the sum of NINETY THOUSAND DOLLARS ($90,000.00)." Clearly, at least between Continental and Riveras, and consequently any other entity that might ultimately seek any additional recovery from Continental, the agreement fixes the total damages suffered by Riveras at $90,000.00.

[2]We question SIIS's authority to assert a lien against Continental's payments to Riveras. SIIS apparently assumed, erroneously, that its lien authority derived from NRS 616.560. Subsection (1) addresses SIIS's right of subrogation against a recovery obtained by the injured employee against a third-party tortfeasor. The injured employee's entitlement to coverage from his own insurance policy is based upon contract; therefore, SIIS is not authorized to reduce worker's compensation benefits by the amount recovered under the employee's policy.

Subsection (2) does allow SIIS to place liens upon the total proceeds recovered from "some person other than the employer." NRS 616.560(2). However, this subsection also provides no basis for an assertion of the right by SIIS to impose a lien against the Continental payments. Subsection (2) only applies to those persons "as provided in Subsection (1)." Because Continental is not a tortfeasor, it does not fall within the purview of either subsection (1) or (2).

Continental contends that the offset clause of the policy entitles it to deduct the SIIS compensation received by Riveras from the $75,000.00 due Riveras pursuant to the settlement agreement. Simply stated, Continental claims that because the School District was not statutorily required to obtain UM coverage,[3] the offset provision cannot be against public policy.

Riveras contends that the offset provision is against public policy because it prevents him from obtaining insurance benefits for which premiums have been paid.[4] He thus insists that the $75,000.00 settlement from Continental should not be reduced or offset by the compensation he has received from SIIS.

The offset provision at issue in this case does not violate public policy for two reasons: (1) the School District is not required by law to provide UM coverage for its employees, including Riveras; and (2) the UM benefits Riveras received were commensurate with the type of coverage upon which the premiums were calculated and paid.

The School District, being a political subdivision of the State of Nevada, is not required to carry UM coverage. NRS 690B.020. The School District nevertheless decided to provide an extra benefit to its workers by purchasing such coverage. In doing so, however, the School District bargained for and obtained UM coverage that was subject to the offset provision at issue. It is not against public policy for Continental to provide the type of coverage acquired by the School District. Indeed, within the context of this case, public policy may be served through the availability of UM coverage that is subject to such an offset. Insurers will be able to provide governmental entities with optional cost savings if UM coverage may be offered subject to an offset provision. And where, as here, such optional savings are effectuated, an injured government employee who is not fully compensated by a tortfeasor or his or her SIIS benefits will

---

[3]Continental cites NRS 690B.020(1) as support for its position. That statute reads:

> Except as otherwise provided in this section . . . no policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle may be delivered or issued for delivery in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages, from owners or operators of uninsured . . . vehicles . . . . *No such coverage is required in or supplemental to a policy issued to the State of Nevada or any political subdivision thereof* . . . .

(Emphasis supplied.)

[4]*See* Maxwell v. Allstate Ins. Companies, 102 Nev. 502, 728 P.2d 812 (1986) (in context of automobile insurance this court has consistently held that an insured is entitled to receive benefits for which a premium has been paid).

nevertheless have an additional source of compensation to cover his or her damages.

Moreover, Riveras is receiving the type and amount of coverage for which the School District's policy premiums were paid. The group policy was provided by the School District to its employees as an employment benefit. One can reasonably infer that the School District chose less coverage—the offset provision—in favor of lower premium payments. This makes sense given the fact that the School District was not required to provide any UM coverage in the first place. Moreover, the School District is a contributor to SIIS. NRS 616.275. At least to an extent, the offset provision enabled the School District to avoid paying twice for the same coverage.

Because the offset provision is not against public policy and therefore valid, a determination must be made as to the amount Continental must pay Riveras under the terms of the settlement agreement and release. The record is sufficiently clear on the point to calculate the amount Riveras is entitled to receive from Continental. The two parties agreed that Riveras suffered $90,000.00 in total damages. The parties further agreed that the $15,000.00 Dairyland settlement would be deducted from the $90,000.00. This left $75,000.00 from which the remaining unreimbursable SIIS payments totalling $23,327.91 must be subtracted, thus leaving a balance of $51,672.09. The latter sum represents the amount Continental is obligated to pay Riveras under the Terms of both the group insurance policy and the settlement agreement and release. Since Continental has heretofore paid Riveras $43,320.68, it must now pay Riveras an additional sum of $8,451.41 plus interest.[5]

In view of our ruling, it is clear that Riveras is not entitled to

---

[5]We have determined the amount of Continental's remaining obligation to Riveras based upon the following calculations. Continental and Riveras agreed that the total damages suffered by Riveras were $90,000.00, and that the sum of $15,000.00 received from Dairyland would be deducted therefrom, leaving a balance of $75,000.00 as the total of Continental's potential liability to Riveras. SIIS paid out a total of $41,678.58 in benefits to Riveras, for which it agreed to accept $18,351.41 in total satisfaction of its subrogation rights. The money received by SIIS as reimbursement was obtained in two increments, a $10,000.00 sum taken from the Dairyland proceeds and a second increment of $8,351.41 which Riveras paid from the insurance proceeds of $43,320.68 previously paid to him by Continental. Using the aforementioned figures, it can be seen that Riveras received the following monetary benefits for the injuries he sustained in the accident:

$43,320.68—Proceeds from Continental
15,000.00—Proceeds from Dairyland
23,327.91—Non-reimbursable benefits from SIIS

$81,648.59—Total benefits paid to Riveras

The $10,000.00 paid to SIIS from the Dairyland proceeds still inured to Riveras' benefit in an equivalent amount received by him through SIIS. It is

attorney's fees pursuant to NRCP 68. We therefore reverse the judgment awarding attorney's fees to Riveras. For the reasons stated above, we reverse the judgment entered below and remand to the district court for further proceedings in accordance with this opinion.

clear, however, that when Riveras paid $8,351.41 to SIIS from the money he had received from Continental, Riveras fell short by an equivalent amount from receiving his full $90,000.00 entitlement. Continental is thus obligated to pay Riveras the additional sum of $8,351.41 plus interest in order to make Riveras whole. Given the terms of the settlement agreement, we are unwilling to conclude that Continental should be allowed to consider the stated sum of $8,351.41 as part of the workmen's compensation payments subject to the offset provision.