*773
 
 OPINION
 

 Per Curiam:
 

 This is an appeal from a post-judgment district court order adjudicating the subrogation lien of respondent Coast Hotels and Casinos, Inc. Appellants Alessandro Canfora (Alex) and Christine M. Canfora (Chris) argue that (1) the subrogation agreement is ambiguous, (2) the district court erred by not allowing an offset of attorney fees and costs as established by this court in
 
 Breen v. Caesars Palace,
 

 [2]
 

 and (3) the district court erred by enforcing the subrogation agreement against a nonsignatory beneficiary. We conclude that the Canforas’ arguments lack merit and, therefore, affirm the district court’s order.
 

 FACTS
 

 On March 16, 1999, Alex and Chris, along with their daughter, Alexis, (collectively the Canforas) stopped to refuel the family’s 1994 Chevrolet Camaro at the Mobil service station on Arroyo Grande Boulevard in Las Vegas. After stopping, Alexis asked Alex if she could refuel the car. While exiting the car, Alexis slid across the cloth upholstered seats of the Camaro, creating an electrostatic charge. As Alexis began refueling the car, this charge sparked, igniting the gas and engulfing her in flames. Seeing his daughter on fire, Alex attempted to extinguish the flames, but he too caught fire and was severely burned. Through the help of a bystander, the fire was put out, but not before “Alex suffered second degree burns to his hands and arms [and] Alexis suffered second and third degree bums over fifty percent (50%) of her body.” Chris also aggravated a prior back injury while assisting Alexis.
 

 At the time of the accident, Coast Hotels employed and provided medical insurance to Alex and his designated beneficiaries, Chris and Alexis.
 
 [3]
 
 As a result of this incident, Coast Hotels paid approximately $227,000 of the Canforas’ medical expenses. The group benefit plan sponsored by Coast Hotels contains a subrogation clause, which states:
 

 If you receive benefits under this plan as a result of an injury caused by another party, the plan has the right to seek repay
 
 *774
 
 ment of those benefits from the party that caused the injury. In other words, the plan subrogates or substitutes for you and assumes your right to seek recovery from the negligent party. If you bring a liability claim against that person, benefits payable under this plan must be included in the claim, and when the claim is settled, you must reimburse the plan for the benefits provided. You are obligated to avoid doing anything that would prejudice the plan’s rights of subrogation and reimbursement, and you may be required to sign and deliver documents to evidence or secure those rights.
 

 On May 18, 1999, in connection with requesting payment of medical benefits, Alex, on behalf of himself, Chris, and Alexis, also signed a reimbursement agreement. The reimbursement agreement states:
 

 This agreement will certify that I have filed a claim with Coast Benefits for covered medical expenses on the basis of an injury ....
 

 I have read and understand the paragraph “SUBROGATION OF BENEFITS” on page 47 in the Group Benefits Plan booklet (SUMMARY PLAN DESCRIPTION), and I acknowledge that I am not entitled to coverage for medical expenses under the Coast Resorts Plan where a third party payment is or will be made from another source for the same benefits.
 

 I hereby request that Coast Benefits process and pay the medical benefits incurred from my injury with the full understanding that a third party may be liable for similar benefits. In consideration of this payment, I agree to reimburse Coast Benefits all amounts advanced toward my medical expenses from any proceeds resulting from another payment, settlement or judgment.
 

 After executing the reimbursement agreement, the Canforas, through the law offices of Campbell & Williams, filed a personal injury complaint against several defendants. Ultimately, the Can-foras settled their suit for $12 million. Of this $12 million, the Canforas paid over $5 million in attorney fees and costs. Following the settlement, Coast Hotels contacted Campbell & Williams to obtain reimbursement for the medical expenses it paid on behalf of the Canforas. In response to this request, the Canforas moved the district court to adjudicate Coast Hotels’ lien rights. While the court considered that motion, Campbell & Williams paid Coast Hotels $100,000 and retained approximately $127,000 in a separate trust account.
 

 On February 26, 2003, the district court held a hearing on this motion. After considering both parties’ arguments, the district
 
 *775
 
 court upheld the subrogation clause and reimbursement agreement and ordered Campbell & Williams to pay the remaining $127,000 to Coast Hotels. Alex and Chris timely appealed the district court’s order.
 

 DISCUSSION
 

 Standard of review
 

 In the present case, the facts are not in dispute and the court is faced only with legal issues to consider. This court reviews questions of law de novo.
 
 [4]
 

 Mootness
 

 Coast Hotels argues that the offset issue is moot since Alex and Chris have fully reimbursed the plan for the medical benefits provided. We disagree.
 

 Recently, in
 
 Wheeler Springs Plaza, LLC v. Beemon,
 
 we addressed the issue of whether payment of a monetary judgment renders an appeal moot.
 
 [5]
 
 In
 
 Wheeler Springs,
 
 we held that “payment of a judgment only waives the right to appeal or renders the matter moot when the payment is intended to compromise or settle the matter.”
 
 [6]
 
 In other words, payments made under coercion do not eliminate the right to appeal, even if the party fails “to file a supersedeas bond or seek a stay of execution of a judgment.’ ’
 
 [7]
 

 Here, after settlement of the underlying case, Coast Hotels contacted Campbell & Williams to obtain reimbursement for the medical expenses paid on behalf of the Canforas. In response to this request, the Canforas moved the district court to adjudicate Coast Hotels’ lien rights. After considering the parties’ arguments, the district court found that Coast Hotels was entitled to reimbursement and ordered Campbell & Williams to satisfy the lien. Nothing in the record indicates that the Canforas intended to settle or compromise this matter. The fact that the Canforas did not file a supersedeas bond or request a stay of execution of judgment is irrelevant.
 

 In light of
 
 Wheeler Springs,
 
 we conclude that the Canforas did not waive their right to appeal the district court’s order to satisfy
 
 *776
 
 Coast Hotels’ subrogation lien. Therefore, their appeal is not moot.
 

 Ambiguity
 

 Alex and Chris argue that the subrogation clause and the reimbursement agreement are ambiguous. We disagree.
 

 Generally, when a contract is clear on its face, it “will be construed from the written language and enforced as written.”
 
 [8]
 
 The court has no authority to alter the terms of an unambiguous contract.
 
 [9]
 

 In this case, the language in the subrogation clause could not be more plain. The clause unequivocally provides that when an employee receives the same benefits from the plan and a negligent third party, the recipient “must reimburse the plan for the benefits provided.” Since the subrogation clause is unambiguous, the Can-foras are bound by the terms of the document. In addition, because the subrogation clause alone is sufficient to bind the Canforas to repayment, it is unnecessary to rely on the language in the reimbursement agreement.
 

 Offset of attorney fees and costs
 

 Alex and Chris argue that the district court erred by not allowing an offset of their attorney fees and costs as set forth by this court in
 
 Breen v. Caesars Palace.
 

 [10]
 

 We disagree.
 

 Breen analysis
 

 In
 
 Breen,
 
 we held that, in the context of the workers’ compensation statutes, “an employer may assert a subrogation interest in compensation paid to an employee by a third-party tortfeasor where a work-related injury was caused under circumstances creating a legal liability in a third party.”
 
 [11]
 
 However, we were concerned about the ability of an employer or a subrogee to recover from an employee or subrogor, via subrogation lien, without proportionally sharing the cost of litigation.
 
 [12]
 
 With this in mind, we held that “ ‘[i]t would be unduly burdensome on the claimant to
 
 *777
 
 pay all of the expenses and by the same token it would unjustly enhance the economic position of the carrier not to assess a portion of the costs against it.’ ”
 
 [13]
 
 Therefore, we set forth a formula by which a subrogee’s recovery is offset by a portion of the litigation costs.
 

 This court has only applied
 
 Breen
 
 to workers’ compensation lien cases.
 
 [14]
 
 We declined to extend the offset formula to situations where the employee’s injury was not related to the workplace.
 
 [15]
 
 Here, the district court correctly declined to apply
 
 Breen
 
 since the injuries had no causal connection to the parties’ employment relationship, and therefore the principles behind the workers’ compensation statutory scheme were not implicated. In addition, as discussed below, the make-whole doctrine of insurance law makes an offset of attorney fees and costs unwarranted in this case.
 
 [16]
 

 Make-whole doctrine
 

 The make-whole doctrine “is a general equitable principle of insurance law” that prevents an insurance company from enforcing its subrogation rights before the insured has been fully reimbursed for their losses.
 
 [17]
 
 Under the doctrine, “an insured who has settled with a third-party tortfeasor is liable to the insurer-subrogee only for the
 
 excess
 
 received over the total amount of his loss.”
 
 [18]
 
 Unless it is explicitly excluded, the make-whole doctrine operates as a default rule that is read into insurance contracts.
 
 [19]
 
 The make-whole
 
 *778
 
 doctrine limits “a plan’s subrogation rights where an insured has not received compensation for his total loss,”
 
 i.e.,
 
 has not been made whole.
 
 [20]
 

 Here, the insurance plan language did not explicitly exclude application of the make-whole doctrine. After payment of attorney fees and costs, the Canforas were left with $7 million from the settlement. There is no showing in the record that this amount did not folly compensate the Canforas.
 
 [21]
 
 Therefore, Coast Hotels was entitled to foil reimbursement under the terms of the insurance plan.
 

 Public policy
 

 We have previously prohibited an insurer from asserting a sub-rogation lien against medical payments of its insured as a matter of public policy.
 
 [22]
 
 In
 
 Maxwell
 
 v.
 
 Allstate Insurance Co.,
 
 we were concerned about the injured party recovering less than their full damages.
 
 [23]
 
 However, we have held that where an insured receives “a foil and total recovery,
 
 Maxwell
 
 and its public policy concerns are inapplicable.”
 
 [24]
 
 We also noted that where an employer is not required to provide insurance coverage by law, an offset provision does not violate public policy.
 
 [25]
 

 Because the record does not show that the settlement did not folly compensate the Canforas for their losses, there is no public policy concern to address in this case. In addition, Coast Hotels, as a private employer, is not required by law to provide health insurance benefits for its employees. Because the Canforas entered in to an unambiguous contract to pay back “the benefits provided,” Coast Hotels is entitled to enforce this provision of the insurance plan.
 

 Nonsignatory beneficiaries
 

 Chris and Alex argue that the district court erred in binding Chris and Alexis, two nonsignatories, to the terms of the insurance plan. We disagree.
 

 
 *779
 
 Because Alexis is not a named party on this appeal, we address solely whether Chris was bound by the terms of the insurance plan. Generally, an intended third-party beneficiary is bound by the terms of a contract even if she is not a signatory.
 
 [26]
 
 Whether an individual is an intended third-party beneficiary, however, depends on the parties’ intent, “gleaned from reading the contract as a whole in light of the circumstances under which it was entered.”
 
 [27]
 

 In the instant case, Chris was an intended third-party beneficiary. In addition to being listed as an intended beneficiary of the plan, all her medical expenses arising from the 1999 accident were covered by Coast Hotels. The fact that she did not sign the contract herself is irrelevant. Thus, the district court did not err by binding Chris to the terms of the insurance plan.
 

 CONCLUSION
 

 We hold that the Canforas did not waive their rights to appeal the district court’s order adjudicating Coast Hotels’ subrogation lien. We also conclude that the district court properly adjudicated Coast Hotels’ subrogation lien rights. Additionally, the Canforas are bound to the terms of the subrogation clause since the language is unambiguous. Further, the district court correctly declined to apply
 
 Breen
 
 since the Canforas entered into an unambiguous contract to pay back the plan and were also made whole by the settlement. Finally, the district court did not err in binding Chris to the terms of the insurance plan since Chris was a named beneficiary. Therefore, we affirm the district court’s order.
 

 [2]
 

 102 Nev. 79, 715 P.2d 1070 (1986).
 

 [3]
 

 Coast Hotels owns and operates its own medical insurance plan referred to as Coast Benefits.
 

 [4]
 

 Wheeler Springs Plaza, LLC v. Beemon,
 
 119 Nev. 260, 263, 71 P.3d 1258, 1260 (2003).
 

 [5]
 

 119 Nev. at 262, 71 P.3d at 1259.
 

 [6]
 

 Id.
 
 at 265, 71 P.3d at 1261.
 

 [7]
 

 Id.
 

 [8]
 

 Ellison
 
 v.
 
 C.S.A.A.,
 
 106 Nev. 601, 603, 797 P.2d 975, 977 (1990).
 

 [9]
 

 Renshaw
 
 v.
 
 Renshaw,
 
 96 Nev. 541, 543, 611 P.2d 1070, 1071 (1980).
 

 [10]
 

 102 Nev. 79, 715 P.2d 1070 (1986).
 

 [11]
 

 Id.
 
 at 81-82, 715 P.2d at 1071-72 (internal quotation marks omitted).
 

 [12]
 

 Id.
 
 at 85, 715 P.2d at 1074 (concluding that an employer or subrogee “would be unjustly enriched if it were permitted to assess its lien against the total proceeds of the settlement without bearing its share of litigation expenses”).
 

 [13]
 

 Id.
 
 at 84, 715 P.2d at 1073-74 (quoting
 
 Transport Indemnity Company
 
 v.
 
 Garcia,
 
 552 P.2d 473, 476 (N.M. Ct. App. 1976)).
 

 [14]
 

 This court determined that the
 
 Breen
 
 off-set formula did not apply to an award obtained under NRS 217.240, the Nevada Crime Fund’s subrogation statute.
 
 State Victims of Crime Fund v. Barry,
 
 106 Nev. 291, 292, 792 P.2d 26, 27 (1990). However, we noted that due to a specific amendment allowing for the state’s subrogation right to be diminished by litigation costs and attorney fees incurred in obtaining a recovery from a third party, the
 
 Breen
 
 formula would apply to the Crime Fund in the future.
 
 Id.
 
 at 293 n.1, 792 P.2d at 27 n.1.
 

 [15]
 

 Id.
 
 at 293, 792 P.2d at 27.
 

 [16]
 

 Coast Hotels contends that any state law analysis under
 
 Breen
 
 is preempted by federal law since its benefits plan qualifies as an employee benefit plan under ERISA. As Coast Hotels did not raise this issue below, it is waived on appeal.
 
 Diamond Enters., Inc.
 
 v.
 
 Lau,
 
 113 Nev. 1376, 1378, 951 P.2d 73, 74 (1997).
 

 [17]
 

 Barnes v. Independent Auto. Dealers of California,
 
 64 F.3d 1389, 1394 (9th Cir. 1995).
 

 [18]
 

 Guy v.
 
 Southeastern Iron Workers’ Welfare Fund,
 
 877 F.2d 37, 39 (11th Cir. 1989).
 

 [19]
 

 Cagle
 
 v.
 
 Bruner,
 
 112 F.3d 1510, 1520-21 (11th Cir. 1997).
 

 [20]
 

 Id.
 
 at 1521.
 

 [21]
 

 We reserve ruling on the application of the make-whole doctrine in those cases where the recovery amount is inadequate to fully compensate the insured for their losses.
 

 [22]
 

 Maxwell v. Allstate Ins. Co.,
 
 102 Nev. 502, 506, 728 P.2d 812, 815 (1986).
 

 [23]
 

 Id.
 

 [24]
 

 Ellison v. C.S.A.A.,
 
 106 Nev. 601, 605, 797 P.2d 975, 978 (1990).
 

 [25]
 

 Continental Casualty
 
 v.
 
 Riveras,
 
 107 Nev. 530, 533, 814 P.2d 1015, 1017 (1991).
 

 [26]
 

 County of Clark
 
 v.
 
 Bonanza No. 1, 96
 
 Nev. 643, 648-49, 615 P.2d 939, 943 (1980);
 
 Gibbs
 
 v.
 
 Giles, 96
 
 Nev. 243, 246-47, 607 P.2d 118, 120 (1980).
 

 [27]
 

 Jones v. Aetna Cas. and Sur. Co.,
 
 33 Cal. Rptr. 2d 291, 296 (Ct. App. 1994).