OPINION
By the Court,
Maupin, J.:
In these appeals, which involve workers injured in work-related automobile accidents, we consider certain relationships between workers’ compensation insurance and uninsured/underinsured motorist (UM/UIM) coverage purchased by the employer: first, whether workers’ compensation insurers enjoy independent statutory rights to subrogate against employer-furnished UM/UIM coverage; second, whether the UM/UIM insurer may unilaterally exclude coverage for such liabilities.

FACTS AND PROCEDURAL HISTORY

Respondent Employers Insurance Company of Nevada (EICON) is a private concern that sells and issues workers’ compensation in *993 surance to Nevada employers. These appeals concern the extent of EICON’S right to subrogate against the proceeds of UM/UIM coverage purchased from appellant St. Paul Fire and Marine Insurance Company (St. Paul) by employers of two workers injured in work-related automobile accidents. The appeal in Docket No. 43518 arises from a workers’ compensation claim filed by April Wess-man. The appeal in Docket No. 42621 arises from a workers’ compensation claim filed by James Ormonde.

Docket No. 43518

April Wessman was injured in a work-related automobile accident with a negligent hit-and-run driver and received workers’ compensation benefits from her employer’s workers’ compensation insurer, EICON. At the time of the accident, Wessman was driving a vehicle owned by her employer and insured through St. Paul. The St. Paul policy included UM/UIM coverage. Under Nevada law, such coverage provides monetary benefits to persons insured under automobile liability policies who have been injured by neg-ligept uninsured, underinsured, or hit-and-run drivers.[2] In summary, UM/UIM coverage will compensate an insured driver or passenger for pain and suffering, medical expenses, and lost wages based upon the tort liability of the uninsured, underinsured, or hit- and-run driver. Although Wessman made no claims against her employer’s UM/UIM coverage, EICON sought reimbursement thereunder for the workers’ compensation benefits it paid to her. St. Paul denied EICON’S claim.
EICON subsequently brought an action against St. Paul seeking a judicial declaration confirming its right to subrogate against the employer’s UM/UIM coverage, regardless of whether the employee sought or received UM/UIM benefits. The district court granted EICON’S motion for summary judgment on this issue, concluding that Nevada law provides workers’ compensation insurers an independent right of subrogation against an employer’s UM/UIM coverage.[3] Ultimately, the district court entered judgment in favor of EICON and against St. Paul in the amount of $12,459.20 together with interest at the statutory rate.[4]

Docket No. 42621

James Ormonde was also injured in a work-related automobile accident while driving an employer-owned vehicle, also insured by *994 St. Paul. As a result, he received $86,339.31 in workers’ compensation benefits from EICON. Ormonde then brought suit and settled with the adverse driver’s insurer for policy limits of $50,000. After reimbursement of Ormonde’s attorney for his out-of-pocket costs, Ormonde, Ormonde’s attorney and EICON evenly split the balance of the settlement proceeds.[5] EICON received $16,500 from the settlement, leaving EICON’S remaining unreim-bursed expenditures at $69,789.31. EICON and Ormonde both proceeded to make “underinsured motorist” claims against the UM/UIM coverage provided under the employer’s policy with St. Paul. St. Paul denied coverage to EICON, citing policy provisions that excluded coverage when the benefits worked to the direct or indirect benefit of any workers’ compensation benefit provider, and limited the available coverage to elements of loss covered by workers’ compensation insurance.
Consequently, EICON filed a separate subrogation action against St. Paul seeking a judicial declaration that the exclusionary clauses were unenforceable in light of the 1993 amendments to NRS 616C.215, which permits workers’ compensation insurers to sub-rogate against UM/UIM policies issued to employers of persons injured in work-related motor-vehicle accidents. Additionally, EICON sought a declaration that if Ormonde recovered any monies from St. Paul, EICON was subrogated to a share of that recovery.
In litigating cross-motions for summary judgment, St. Paul argued that, under the 1993 legislative amendments to NRS 616C.215, an employer’s UM/UIM policy is only subject to sub-rogation recovery by a workers’ compensation carrier if the policy does not contain exclusion and limitation provisions like those found in its policy. The district court entered summary judgment in favor of EICON, concluding that the exclusions and limitations in St. Paul’s UM/UIM policy were void under NRS 616C.215(3). In a subsequent order, the district court entered judgment in favor of EICON in the amount of $89,074.27, plus costs.
St. Paul appeals the district court orders in both cases. We consolidated these appeals for decision.

DISCUSSION

Independent right of action

The parties to these appeals dispute EICON’S right, claimed under NRS 616C.215(3), to seek reimbursement of workers’ compensation benefits by way of an independent subrogation action *995 against UM/UIM coverage purchased by an injured worker’s employer. This court reviews the district court’s construction of NRS 616C.215 de novo.[6] In relevant part, NRS 616C.215(3)(b) provides that an industrial insurer is subrogated to the injured employee’s rights to recover UM/UIM benefits available under the employer’s automobile liability policy:
If an injured employee, or in the case of death his dependents, receive compensation pursuant to the provisions of chapters 616A to 616D, inclusive, or chapter 617 of NRS, the insurer, or in the case of claims involving the uninsured employers’ claim account or a subsequent injury account the Administrator, is subrogated to the rights of the injured employee or his dependents to recover proceeds under the employer’s policy of uninsured or underinsured vehicle coverage.
EICON argues that this language is clear and unambiguous and provides for the relief sought in this matter. St. Paul contends that this language does not unambiguously provide EICON an independent private right of action to obtain reimbursement directly from the UM/UIM insurer. In this, St. Paul refers us to NRS 616C.215(2)(b), which gives the workers’ compensation insurer the right to independently sue a third-party tortfeasor who is liable for damages sustained by an employee in a work-related automobile accident:
If the injured employee, or in case of death his dependents, receive compensation pursuant to the provisions of chapters 616A to 616D, inclusive, or chapter 617 of NRS, the insurer . . . has a right of action against the person so liable to pay damages and is subrogated to the rights of the injured employee or of his dependents to recover therefor.
St. Paul reasons that the Legislature’s failure to explicitly provide for a “right of action” for workers’ compensation insurers in NRS 616C.215(3)(b), as it did in NRS 616C.215(2)(b), demonstrates its clear intent to preclude private rights of action by industrial insurers against employer-provided UM/UIM coverages. St. Paul thus contends that EICON can only subrogate against UM/UIM benefits by exercising its statutory lien rights when the employee actually receives such benefits.[7] Because the legislative history of these measures in relation to our prior interpretations of them runs counter to this argument, we disagree.
To explain, prior to 1993, the Nevada Industrial Insurance Act gave no express direction concerning the possible rights of worlc- *996 ers’ compensation insurers to subrogate against UM/UIM coverage, whether provided by the employer or the employee. In 1991, relying upon Continental Casualty v. Riveras,[8] we held in Truck Insurance Exchange v. SIIS that the statutory subrogation rights of industrial insurers against third parties in work-related automobile accidents were restricted to persons liable in tort, not in contract.[9] We thus concluded that workers’ compensation insurers did not have subrogation rights against employer- or employee-provided UM/UIM coverage.[10] In direct response to Truck Insurance Exchange, the 1993 Nevada Legislature amended NRS 616C.215, specifically granting workers’ compensation insurers subrogation rights against UM/UIM coverage purchased by employers.[11] Thereafter, in Silvera v. EICON, we noted that the 1993 amendments “would have changed the result in Truck Insurance Exchange’’[12]
The use of the term “subrogation” in NRS 616C.215 denotes either an express or implied assignment of the rights from one person to another. The rights assigned include the right to sue the UM/UIM carrier for denied benefits.[13] Because subrogation necessarily includes a right of action, we conclude that the Legislature intended in the current version of NRS 616C.215(3) to allow industrial insurers an independent right of action against UM/UIM *997 coverage provided by the employer, irrespective of any claims made by an injured employee against such coverage.[14]
We therefore conclude that the district court properly granted summary judgment in favor of EICON on the basic right of the workers’ compensation insurer to file such actions on its own behalf.

Scope and application of exclusion and limitation language in the employer’s UM/UIM policy

Having determined that EICON has an independent right of action, we turn to St. Paul’s argument that an employer’s UM/UIM policy is only subject to subrogation recovery by a workers’ compensation carrier if the UM/UIM policy does not contain limitation and exclusion provisions like those contained in its policy. St. Paul limitation and exclusion clauses C.2 and D.2 provide as follows:
C. Exclusions
This insurance does not apply to any of the following: . . .
2. The direct or indirect benefit of any insurer or self-insurer under any workers’ compensation, disability benefits or similar law.
D. Limit of Insurance ....
2. No one will be entitled to receive duplicate payments for the same elements of “loss” under this Coverage Form and any Liability Coverage Form or Medical Payments Coverage endorsement attached to this Coverage Part.
We will not make a duplicate payment under this Coverage for any element of “loss” for which payment has been made by or for anyone who is legally responsible.
We will not pay for any element of “loss” if a person is entitled to receive payment for the same element of “loss” under any workers’ compensation, disability benefits or similar law.
The district court concluded that these provisions are void as against public policy based upon its view that the provisions resulted in a double deduction from coverage otherwise available to *998 the employee. In reaching this conclusion, the district court first interpreted the limitation clause set forth in D.2 to first require a reduction in the available UM/UIM coverage by the amount of the workers’ compensation carrier’s expenditures. The district court then reasoned that a workers’ compensation carrier could still assert its subrogation rights to recoup its expenditures from the remaining UM/UIM coverage by exercising its lien rights, leaving the injured employee with little to no coverage available for losses such as pain and suffering, which are not covered by workers’ compensation.
The problem with the district court’s analysis is twofold. First, the district court apparently interpreted D.2 to require a dollar-for-dollar reduction in the benefits available like the clause in Riveras,[15] which provided that “ ‘any amount payable under [the] coverage shall be reduced by . . . all sums paid or payable under any worker’s compensation, disability benefits or similar law.’ ”[16] However, unlike the clause at issue in Riveras, D.2 simply limits the coverage available to an injured employee to elements of loss not already covered by the workers’ compensation carrier. For example, medical expenses and lost wages paid to the injured worker. Thus, St. Paul’s provision only precludes duplication of benefits, whereas the clause in Riveras required a reduction in the amount of available UM/UIM coverage for amounts paid in workers’ compensation benefits.
The second error in the lower court’s analysis of these clauses stems from its conclusion that a workers’ compensation carrier may assert its subrogation rights to recoup its expenditures from the remaining UM/UIM coverage, thereby limiting the amount of coverage available to the injured employee. Provision C.2 in the St. Paul policy, however, excludes payments to workers’ compensation carriers such as EICON, thus prohibiting EICON from asserting its subrogation rights. As EICON is prohibited from recouping its expenses from St. Paul under C.2, the full amount of UM/UIM benefits would, if enforceable, remain available to an injured employee.
Beyond the analysis of the district court’s ruling, we must resolve whether the 1993 amendments to NRS 616C.215 affect our ruling in Riveras, regarding the right of the UM/UIM insurer to offset or exclude unreimbursed workers’ compensation payments. EICON contends that these amendments completely overturn Riveras and that, as a matter of law, once the workers’ compensa *999 tion insurer pays industrial insurance benefits, the burden of payment unqualifiedly shifts under NRS 616C.215 to any applicable employer-provided UM/UIM insurance.
In Riveras, a public employer provided both workers’ compensation and UM/UIM coverage. We concluded:
The offset provision at issue in this case does not violate public policy for two reasons: (1) the School District is not required by law to provide UM coverage for its employees, including Riveras; and (2) the UM benefits Riveras received were commensurate with the type of coverage upon which the premiums were calculated and paid.
The School District, being a political subdivision of the State of Nevada, is not required to carry UM coverage. NRS 690B.020.[17] The School District nevertheless decided to provide an extra benefit to its workers by purchasing such coverage. In doing so, however, the School District bargained for and obtained UM coverage that was subject to the offset provision at issue. It is not against public policy for [the UM insurer] to provide the type of coverage acquired by the School District. Indeed, within the context of this case, public policy may be served through the availability of UM coverage that is subject to such an offset. Insurers will be able to provide governmental entities with optional cost savings if UM coverage may be offered subject to an offset provision. And where, as here, such optional savings are effectuated, an injured government employee who is not fully compensated by a tortfea-sor or his or her SIIS benefits will nevertheless have an additional source of compensation to cover his or her damages.
Moreover, Riveras is receiving the type and amount of coverage for which the School District’s policy premiums were paid. The group policy was provided by the School District to its employees as an employment benefit. One can reasonably infer that the School District chose less coverage — the offset provision — in favor of lower premium payments. This malees sense given the fact that the School District was not required to provide any UM coverage in the first place. Moreover, the School District is a contributor to SIIS. NRS 616.275. At *1000 least to an extent, the offset provision enabled the School District to avoid paying twice for the same coverage.[18]
We conclude that the basis for enforcing the offset language survives the amendments to NRS 616C.215. This provision only changes the outcome of Truck Insurance Exchange and Riveras by giving the workers’ compensation insurer a right of subrogation against UM/UIM coverage, it does not expressly or impliedly address the doctrinal foundation set forth in Riveras of allowing employers flexibility in protecting employees involved in work-related accidents.[19] Thus, Riveras remains valid authority to that extent.
As in Riveras, because of their rights of waiver or rejection, the employers in these matters were not required to provide UM/UIM coverage to their employees. Accordingly, they could, at their option, exercise considered business judgment to expand benefits protecting their workers by providing both workers’ compensation and UM/UIM coverage. And, given that they elected to purchase both, per Riveras, they could certainly choose to purchase restricted UM/UIM coverage for a lower cost.
Additionally, we note that workers’ compensation insurance was privatized by the Legislature in 2000 and that the perceived financial crisis that confronted the former State Industrial Insurance System (SIIS) and led to privatization no longer exists. In this, we take judicial notice of the ongoing financial difficulties encountered by the former SIIS in the years leading to privatization in 2000. Certainly, in 1993, the Legislature was looking for virtually any source of relief for SIIS when it expanded its subrogation rights in NRS 616C.215(3). Thus, we see no continuing imperative to shift the burden to other insurers to pay benefits arising from work-related accidents.
Finally, we have uniformly recognized that workers’ compensation laws “reflect a clear public policy favoring economic security for employees injured while in the course of their employment.’ ’[20] We conclude that this policy supports the enforcement of the offset and exclusionary provisions in this case. Our refusal to enforce such provisions would undoubtedly create a disincentive for employers to purchase additional insurance to protect their employees. In essence, if we embrace EICON’S position, that it has a primary right to subrogate against an employer’s UM/UIM coverage and that St. Paul cannot exclude coverage for EICON’S subrogation rights, Nevada employers would be ‘ ‘purchasing insurance for their *1001 insurance” with the associated duplicate costs, thus leading to inevitable employer decisions to forego the additional protection altogether. Accordingly, the district court erred in refusing to enforce clauses C.2 and D.2.

CONCLUSION

NRS 616C.215(3) grants workers’ compensation insurers like EICON an independent right to seek subrogation against UM/UIM coverage purchased by an insured employer. That right, however, may be restricted by the UM/UIM carrier through the use of limitations and exclusions such as those utilized by St. Paul in the instant matter. We have considered St. Paul’s other contentions and conclude that they are without merit.
Accordingly, we affirm in part, concluding that EICON has an independent right of action under NRS 616C.215(3). We reverse in part, concluding that the district court erred in granting summary judgment in favor of EICON.[21] Accordingly, we remand this matter for proceedings consistent with this opinion.
Rose, C. J., Becker, Gibbons, Douglas and Parraguirre, JJ., concur.

 See NRS 690B.020; NRS 687B. 145(2).

 See NRS 616C.215(3), discussed infra.

 The district court also awarded EICON costs as the prevailing party pursuant to NRS 18.020.

 EICON asserted statutory lien rights against the settlement under NRS 616C.215(5).

 Silvera v. EICON, 118 Nev. 105, 106, 40 P.3d 429, 430 (2002).

 See NRS 616C.215(5).

 107 Nev. 530, 532 n.2, 814 P.2d 1015, 1017 n.2 (1991).

 107 Nev. 995, 996-97, 823 P.2d 279, 280-81 (1991).

 Id. at 997, 823 P.2d at 281.

 1 Journal S., 67th Leg. 322 (Nev. 1993); Memorandum from Donald O. Williams, Principal Research Analyst, Legislative Counsel Bureau to Assemblywoman Chris Giunchigliani on Proposed Amendments on Subrogation, Reopening Claims and Hearings and Appeals (May 12, 1993), available at Minutes of Hearing on S.B. 316 Before the Assembly Comm. on Labor and Mgmt., 67th Leg., Ex. L (Nev., May 12, 1993); Work Session on S.B. 316 (First Reprint) for Assembly Comm. on Labor and Mgmt. (Nev., May 12, 1993), available at Minutes of Hearing on S.B. 316 Before the Assembly Comm. on Labor and Mgmt., 67th Leg., Ex. C (Nev., May 12, 1993).
These amendments forbid industrial insurer subrogation against UM/UIM coverage purchased by the employee. See NRS 616C.215(3)(b).

 Silvera, 118 Nev. at 108, 40 P.3d at 431.

 Black’s Law Dictionary defines subrogation as
[t]he substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities. . . . Insurance companies, guarantors and bonding companies generally have the right to step into the shoes of the party whom they compensate and sue any party whom the compensated party could have sued.
Black’s Law Dictionary 1427 (6th ed. 1990). Thus, the worker’s right of action to claim UM/UIM benefits becomes, under the statutory language, assigned in whole or in part to the industrial insurer.

 While NRS 616C.215(5) certainly gives lien rights to EICON against the employer’s UM/UIM coverage, such rights would be ineffectual in the event that, as in the Wessman case, the employee makes no claim against the employer-provided UM/UIM coverage. However, the 1993 amendments to NRS 616C.215(3), by using the term subrogation, manifest the clear legislative intent that EICON’S subrogation rights are not procedurally restricted to assertions of lien rights when employees receive UM/UIM benefits.

 107 Nev. at 534, 814 P.2d at 1018.

 Id. at 532, 814 P.2d at 1017 (quoting policy).

 In making this comment, the court mistakenly implied that NRS 690B.020(1) requires that all persons other than government entities purchase UM/UIM coverage as part of their automobile liability policies. In fact, no person or entity insured under a motor vehicle liability policy is required to purchase UM/UIM insurance. See NRS 690B.020; NRS 687B. 145(2). Rather, NRS 690B. 020(1) requires that motor vehicle insurers issue UM/UIM coverage to all persons insured under such policies, except state and local governments, in the absence of a rejection or waiver.

 107 Nev. at 533-34, 814 P.2d at 1017-18.

 See Orr Ditch Co. v. Dist. Ct., 64 Nev. 138, 168-69, 178 P.2d 558, 573 (1947) (concluding that statutes in derogation of common law must expressly manifest or fairly imply legislative intent to overturn prior precedent).

 Hansen v. Harrah’s, 100 Nev. 60, 63, 675 P.2d 394, 396 (1984).

 The only issue before the court in the Wessman matter was whether EICON enjoyed an independent right of subrogation against St. Paul. Having succeeded on that issue, EICON would ostensibly have to confront St. Paul’s argument infra, that EICON’S right to recover would be restricted under the exclusionary clauses quoted supra.